**Mark Ross WEINBERG, Plaintiff,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Susan M. Phillips, National Futures Association and Robert K. Wilmouth, Defendants.**

**No. CV86–7603–R.**

United States District Court, C.D. California.

May 2, 1988.

Gregory C. Glynn, Walter, Finestone, Richter & Kane, Los Angeles, Cal., for plaintiff.

Ellen J. Abraham, Commodity Futures Trading Com'n, Los Angeles, Cal., for defendants Commodity Futures Trading Com'n and Susan M. Phillips.

Robert D. Lewis, Sidley & Austin, Los Angeles, Cal., for defendants National Futures Ass'n and Robert K. Wilmouth.

## OPINION

REAL, Chief Judge.

Plaintiff MARK ROSS WEINBERG (WEINBERG) moves for summary judgment on his Amended Petition and Complaint. His complaint alleges that the procedure used by National Futures Association to discipline members is not authorized by the Commodity Exchange Act, 7 U.S.C. §§ 1–24. He also alleges that the Member Responsibility Actions employed by the National Futures Association to discipline him denied him due process of law under the

5th Amendment. A final allegation is that the Commodity Futures Trading Commission's final order affirming the action of the National Futures Association was contrary to constitutional right, in excess of statutory discretion, arbitrary, capricious, an abuse of discretion and without observance of procedures required by law in violation of the Administrative Procedure Act, 5 U.S.C. §§ 702–706.

The defendants NATIONAL FUTURES ASSOCIATION (NFA), COMMODITY FUTURES TRADING COMMISSION (CFTC), SUSAN M. PHILLIPS (PHILLIPS), and ROBERT K. WILMOUTH (WILMOUTH) deny WEINBERG'S allegations and move for summary judgment in their favor.

This is a case of first impression as the first MEMBER RESPONSIBILITY ACTION ever appealed to the CFTC and the first brought for review in federal court. It is ripe for summary judgment since there is no dispute of material fact. All turns of the authority and procedures of the NFA and the CFTC in suspending WEINBERG'S trading activities in the commodity markets.

## BACKGROUND

Plaintiff WEINBERG is engaged in commodity market trading. He is registered with the CFTC as a Commodity Trading Advisor [1] and a Commodity Pool Operator.[2]

In the summer of 1985 the NFA became aware of certain customer complaints concerning WEINBERG. This complaint charged that WEINBERG had borrowed large sums of money to be used to exercise certain put options in Mocatta silver and held in WEINBERG'S personal trading account. These loans totaled over $700,000 and had not been repaid. WEINBERG had promised to repay the loans from trading

1. A Commodity Trading Advisor is one who gives commodity trading advice as a business for compensation or profit 7 U.S.C. § 2.

2. A Commodity Pool Operator is one engaged in a business that operates in the commodity market in the nature of a mutual fund 7 U.S.C. § 2.

3. NFA Compliance Rule 2–5 requires NFA members to cooperate fully in any investigation, in-

profits he guaranteed would be forthcoming from his personal trading account.

NFA undertook an investigation of these charges. NFA auditors requested access to WEINBERG'S books and records, including his personal financial records. WEINBERG'S personal financial records were requested because WEINBERG commingled his personal and business records. To trace funds loaned to WEINBERG and the disposition of these funds his personal financial records were essential.

WEINBERG refused to produce his records could jeopardize his status as an FBI informant in the investigation of certain organized crime figures. This claim was refuted when the NFA confirmed with the FBI that NFA's request would not interfere with any FBI investigation.

WEINBERG further told the NFA auditors that he had been "laundering" money for organized crime figures and could not repay his loans because of the loss of money to these persons.

The NFA in a letter dated August 2, 1985 again requested access to WEINBERG'S personal financial records. In this letter he was warned that failure to produce the requested records could result in disciplinary action. In answer to the NFA's request WEINBERG'S counsel offered to produce an excised copy of records. The NFA rejected that offer because the NFA auditors could not trace the transactions in question without WEINBERG'S complete records.

On September 20, 1985 the NFA issued the first MEMBER RESPONSIBILITY ACTION (MRA 1). The NFA found that WEINBERG'S refusal to produce his records violated NFA Compliance Rules 2–5,[3] 2–13[4] and 3–1.[5] The NFA also found

quiry, audit, examination or proceeding of compliance with NFA requirements.

4. Rule 2–13 incorporates CFTC's recordkeeping and other requirements applicable to Commodity Trading Advisors and Commodity Pool Operators.

5. Rule 3–1 authorizes the NFA Compliance Director to conduct audits, examinations, investigations and proceedings. The Compliance Di-

that prompt action was necessary to protect customers, the commodity futures market and other members. NFA acted under summary proceedings.

MRA 1 prohibited WEINBERG from soliciting, accepting, entering or forwarding any futures or options order for any customers accounts over which he had power of attorney, except for orders liquidating positions. WEINBERG received MRA 1 on September 27, 1985.

October 7, 1985 WEINBERG requested a hearing before the WESTERN REGIONAL BUSINESS CONDUCT COMMITTEE of NFA (WRBCC). WEINBERG'S request was that the hearing be held no later than October 24, 1985 in Los Angeles. Shortly before the hearing before a subcommittee of the WRBCC held on October 23, 1985 WEINBERG, for the first time, claimed that production of his personal financial records would violate his 5th Amendment privilege against self-incrimination.

On October 21, 1985, while the MRA 1 sanctions were still in effect, WEINBERG entered an order establishing a new position for a customer's account. WEINBERG had also solicited and accepted customer funds for the purchase of futures positions. In this latter case WEINBERG was acting as an unregistered futures commission merchant (FCM).[6] The WRBCC issued its written decision affirming MRA 1 on November 4, 1985. WEINBERG appealed the decision of the WRBCC to the CFTC on December 2, 1985. Upon that appeal the MRA 1 sanctions were automatically stayed.[7]

It was not until mid–December 1985 that the NFA discovered WEINBERG'S violation of MRA 1 and unregistered futures commission merchant activity.[8] Upon learning of the violation of MRA 1 and the violation of law NFA issued a second MEMBER RESPONSIBILITY ACTION (MRA 2) suspending WEINBERG'S membership in NFA until he demonstrated compliance with all NFA requirements.[9] Effectively WEINBERG was precluded from engaging in the commodity futures business.

On January 14, 1986 the WRBCC held a hearing on the appeal of MRA 2 by WEINBERG. The WRBCC affirmed MRA 2 on January 28, 1986. WEINBERG appealed to the CFTC.

Finding that WEINBERG had committed the acts alleged by NFA the CFTC on June 6, 1986 affirmed, after a de novo review of both MRA 1 and MRA 2.

WEINBERG has been suspended from engaging in the commodity futures market.

## THE CLAIMS OF WEINBERG

1. THE SUMMARY PROCEEDING EMPLOYED THE NFA IN ISSUING MRA 1 AND MRA 2 IS NOT AUTHORIZED BY THE COMMODITY EXCHANGE ACT.

■ The NATIONAL FUTURES ASSOCIATION rules provide for a procedure by which the president and the executive committee of the NATIONAL FUTURES ASSOCIATION can summarily restrict a members operations in the commodity futures market or suspend membership where they believe such action is necessary

---

rector is authorized to compel testimony, subpoena documents and require statements under oath from any NFA Member, Associate or other related person.

6. A futures commission merchant is one engaged in soliciting or accepting orders for the purchase or sale of any commodity for future delivery in any contract market and accepts money, securities, or property, or extends credit to margin, guarantee or secure any trades or contract 7 U.S.C. § 2.

7. The law in effect in December 1985 provided for an automatic stay when a ruling of the NFA

was appealed to the CFTC. The law has now been changed eliminating the automatic stay but that does not affect this case.

8. Dealing as an unregistered futures Commission merchant is a violation of 7 U.S.C. § 6d, 7 U.S.C. § 13(c).

9. A registered futures association is created under the provisions of 7 U.S.C. § 21. Membership in such association is not mandatory 7 U.S.C. § 21(e) but can be made mandatory under the provisions of 7 U.S.C. § 21(m). Membership in NFA has been made mandatory pursuant to 7 U.S.C. § 21(m).

to "protect the commodity futures markets, customers or other members." This is an emergency power that supplements the provision for a compliance hearing providing notice, discovery and hearing.

Title 7 U.S.C. § 21 provides for the registration with the CFTC of registered futures associations. These associations must provide in their rules for the discipline by expulsion, suspension, fine, censure, or being suspended or banned from being associated with all members, or other fitting penalty for any violation of its rules 7 U.S.C. § 21(b)(8).

As part of the qualification to act as a registered futures association the rules of the association must provide "a fair and orderly procedure with respect to the disciplining of members" 7 U.S.C. § 21(b)(9). As part of the "fair and orderly procedure" 7 U.S.C. § 21(b)(9) requires the association rules to provide (1) specific charges be brought, (2) the member be notified of the charges, (3) the member be given an opportunity to defend against such charges and (4) a record be kept of the proceedings.

The statutory scheme does not provide for summary proceedings in disciplinary action but does specifically provide that summary proceedings are not to be used in the denial of membership. This specific exclusion permits the interpretation of the statutory language requiring approval by the CFTC of NFA rules to permit the summary proceedings that led to the issuance of MRA 1 and MRA 2 as part of the simple statutory rubric "fair and orderly procedure."

The CFTC could and did grant NFA registration as a registered futures association in 1981. It must be inherent in the grant as a registered futures association that the Commission found the summary MRA procedures to be "fair and orderly." If this was not done expressly at least the Commission gave tacit approval by its accept-

ance of NFA as a registered futures association. *Cf. CBS, Inc. v. FCC,* 453 U.S. 367, 382, 101 S.Ct. 2813, 2823, 69 L.Ed.2d 706 (1981).

As important to the consideration of the authority for summary proceedings is the fact that Congress, itself having knowledge of the procedure, did nothing to change it although it did make other changes in the MRA procedures.[10]

## 2. THE MRA ACTIONS OF NFA DENIED WEINBERG DUE PROCESS OF LAW UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

■ The Supreme Court has uniformly sanctioned the use of summary proceedings where action is necessary to protect the public for improper conduct that must be stopped before a formal hearing can be had.[11] In such cases a post summary proceeding has satisfied the Supreme Court's concern for due process.[12] WEINBERG'S reliance on *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) is misplaced. The public interest in the maintenance of a viable and honest commodities futures market unlike the suspension of welfare privileges or grant of attachments makes summary action permissible. *Fuentes,* supra, acknowledged that concern and justification in 407 U.S. at 90–92, 92 S.Ct. at 1999–2000.

The charges against WEINBERG were serious. The NFA had received complaints that WEINBERG had borrowed large sums of money to be used to trade in his own account and had failed to repay the loans as promised out of trading profits. In answer to the queries of NFA investigators WEINBERG stated he had been engaged in a scheme to launder funds for members of organized crime. To complete their investigation the investigators on several oc-

---

**10.** See H.R.Rep. No. 624 99th Cong.2d Sess. 10–11 (1986); S.Rep. No. 99–291 99th Cong.2d Sess. 8 (1986), *U.S.Code Cong. & Admin.News* 1986, pp. 6005, 6011–12.

**11.** *Barry v. Barchi* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *Ewing v. Mytinger & Casselberry, Inc.* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed.

1088 (1950); *Fahey v. Mallonee* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947).

**12.** *Hodel v. Virginia Surface Mining & Reclamation Association,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981).

casions asked to see WEINBERG'S banking records. WEINBERG refused giving invalid and what appeared to be concocted reasons for his refusal. With the public interest in mind NFA was left no alternative other than to summarily issue MRA 1.

That was not the end of WEINBERG'S violation of the Commodities Futures Trading Act. While MRA 1 was on appeal to the Commodities Futures Trading Commission the NFA discovered that while MRA 1 sanctions were still in effect WEINBERG had violated the restrictions imposed by MRA 1. This discovery led to the summary issuance of MRA 2.

Both of these actions by the NFA were well within the concern of Congress in its expression that futures transactions are "affected with a national public interest." [13] The summary procedures employed by NFA satisfy the due process clause of the 5th Amendment of the United States Constitution.

### 3. WEINBERG WAS DENIED PROCEDURAL RIGHTS OF DISCOVERY, CROSS EXAMINATION AND RIGHT TO SUBPOENA WITNESSES AT THE POST–MRA HEARINGS.

#### a. DISCOVERY RIGHTS

■ The rules of NFA do not provide for discovery. It is settled that administrative proceedings provide no basic constitutional right to pre-trial discovery.[14] Moreover he requested none.

#### b. CROSS–EXAMINATION

■ This claim involves the use by the NFA of the affidavits of Mr. Peter Tholke and Mr. Richard Fields.

Administrative proceedings are not straight-jacketed with the formality of the rules of evidence.[15] As long as there is substantial evidence there is no constitutional infirmity in the informality of the

proceedings held before administrative tribunals made up of laymen familiar with the workings of the commodities trading industry.

#### c. RIGHT TO SUBPOENA WITNESSES

WEINBERG complains of his inability to subpoena Mrs. Jack Zuckerman, a witness who testified against him at the MRA 2 hearing. WEINBERG did not attempt in any way to obtain Mrs. Zuckerman's voluntary presence. He excuses that on the basis that his counsel was led to believe that Mrs. Zuckerman would be at the hearing. That claim is foreclosed by the record of the hearing indicating only that NFA's counsel indicated that Mrs. Zuckerman would not be called but it was his understanding that Mrs. Zuckerman would appear. No assurance was given to WEINBERG'S counsel that would permit him to reasonably rely on his present claim.[16]

Nor does WEINBERG indicate in any way what Mrs. Zuckerman would have added to his own admissions concerning the improper conduct that culminated in the issuance of MRA 1 or MRA 2.

#### d. INABILITY TO PRESENT DEFENSE

WEINBERG'S claim that he was not permitted to present a defense is belied by the record. WEINBERG'S counsel was not prepared to proceed when given the opportunity to make his presentation of WEINBERG'S defense. All offers made by NFA to accomodate WEINBERG were refused.

### 4. THE DEMAND FOR WEINBERG'S PERSONAL BANK RECORDS VIOLATED THE 5TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

■ WEINBERG defends his repeated refusal to produce his personal bank records invoking the 5th Amendment privilege against self incrimination.

---

**13.** Commodity Exchange Act Section 3.

**14.** *Silverman v. CFTC* 549 F.2d 28 (7th Cir.1977); *Sims v. National Transportation Safety Board* 662 F.2d 668 (10th Cir.1981).

**15.** *Swift & Co. v. United States* 308 F.2d 849 (7th Cir.1962).

**16.** Mr. James Green, counsel for NFA told WEINBERG'S counsel the NFA would not call Mrs. Zuckerman.

WEINBERG'S position is negated by *United States v. Solomon,* 509 F.2d 863 (2d Cir.1975). Like Judge Friendly in *Solomon,* supra, there is no need to add to the plethora of lore on the privilege against self-incrimination.

WEINBERG finds himself much as Alan C. Solomon found himself in an investigation by the New York Stock Exchange for irregularities in reporting the financial condition of Weis Securities Inc., a member of the New York Stock Exchange.

Solomon's testimony before the New York Stock Exchange was used against him in his criminal trial for creating and maintaining false books and records resulting in his conviction. The compulsion of Solomon is a mirror image of the compulsion sought against WEINBERG and is answered by footnote 5 of *Solomon,* supra. Footnote 5 says:

> 5. Solomon treats the case as if he were threatened with permanent loss of employment in the only business which he knew. We see no basis for concluding that Solomon was faced with consequences for refusal to testify alone as certain and drastic as were the officers in *Garrity* [*v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967)]. Solomon's doubtless correct belief that he was faced with a serious penalty could have derived rather from his own knowledge of the enormity of his misconduct and the near certainty that this would be discovered or indeed, already had been as the result of the prior testimony of other officers of Weis (Solomon, supra, at p. 867)

With that the Court concludes:

> ... We thus prefer to place decision on the basic ground that interrogation by the New York Stock Exchange in carrying out it own legitimate investigatory purposes does not trigger the privilege against self-incrimination or, at least under the circumstances here, render Solomon's statement involuntary (Solomon, supra at p. 867).

So it is with WEINBERG. The NFA was conducting an investigation well within its powers as a registered futures association. No 5th Amendment privilege can be claimed by WEINBERG in such an investigation.

WEINBERG claims that the NFA is, if not a government agency, at least a quasi-governmental organization. Solomon made the same claim about the New York Stock Exchange. The court rejected Solomon's claim at page 869, saying:

> NYSE's inquiry into Weis was in pursuance of its own interests and obligations, not as an agent of the SEC. It is not enough to create an agency relationship that Solomon's conduct violated both a rule of NYSE thereby subjecting him to disciplinary action by that body, and federal law, with consequent liability to civil and criminal enforcement proceedings by the Government.

This court now rejects WEINBERG'S claim. Whether the Commodities Futures Trading Act makes membership in a registered futures association mandatory or not makes no difference in the nature of the proceedings of the New York Stock Exchange in *Solomon,* supra, and NFA here. The fundamental purpose of both the New York Stock Exchange and the NFA is self regulation of an industry that is inextricably entwined with the national public interest.

■ Moreover, the records requested by the NFA even if requested by the Commodities Futures Trading Commission would not be within the protection of the 5th Amendment. They are records required to be kept pursuant to the provisions of the Commodities Futures Trading Commission Regulations 4.23(b)(3) and 4.32(b)(3) to which the 5th Amendment would not apply.[17] WEINBERG relies on *United States v. John Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) for his claim that personal records are protected by the 5th Amendment. *Doe,* supra, however does not address the concern in *Shapiro* (supra note 17) for records required to be maintained. WEINBERG had commingled the funds from his business and personal

---

**17.** *Shapiro v. United States* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1946).

accounts. To unravel the commingling and reach the business records NFA needed to obtain the records applicable to the commodities business transactions under investigation. There were, in effect, no personal records. The fact that WEINBERG operated as a sole proprietorship does not help invalidate the holding of *Shapiro* (supra note 17) on the question of the 5th Amendment privilege against self-incrimination where records personal or business are required to be kept by valid governmental regulations.

The motions for summary judgment of defendants NATIONAL FUTURES ASSOCIATION, COMMODITY FUTURES TRADING COMMISSION, SUSAN M. PHILLIPS and ROBERT WILMOUTH are each granted.

The motion for summary judgment of defendant MARK ROSS WEINBERG is denied.