R.J. O'BRIEN & ASSOC., INC., Plaintiff–Appellee,

v.

Thomas D. PIPKIN, Defendant–Appellant.

No. 94–1763.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1995.

Decided Aug. 15, 1995.

---

Lloyd A. Kadish, Kadish & Associates, Chicago, IL, for R.J. O'Brien & Associates, Inc.

Leslie A. Blau (argued), Paul E. Eberhardt, Blau, Eberhardt & Kokoszka, Chicago, IL, Joseph P. Pfingst, Mission Viejo, CA, for Thomas P. Pipkin.

Kathryn Page Camp (argued), Thomas W. Sexton, III, Nat. Futures Ass'n, Chicago, IL, for Nat. Futures Ass'n.

Before ESCHBACH, KANNE, and ROVNER, Circuit Judges.

ESCHBACH, Circuit Judge.

Thomas Pipkin appeals from the district court's decision in a diversity action to confirm an arbitration award entered against him and in favor of R.J. O'Brien & Associates, Inc., ("O'Brien") by the National Futures Association ("NFA"). In Pipkin's mo-

tion to vacate the award, he contended that the NFA imposed mandatory arbitration without contractual or Congressional authority and it appointed a panel in a manner contrary to its own rules. For the reasons below, we affirm.

## I.

The Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1–25, regulates the conduct of participants in transactions involving commodity futures. Persons who actively participate in the industry, such as futures commission merchants, introducing brokers, and persons associated therewith, are obligated to register under the Act. 7 U.S.C. §§ 6f(a) and 6k(1). To oversee the regulatory regime, Congress created the Commodity Futures Trading Commission ("CFTC"), an independent agency which is also vested with the authority to register persons under the Act. Under 7 U.S.C. § 21(o), the CFTC is permitted to delegate this registration function to a registered futures association to be performed in accordance with the association's rules as approved by the CFTC pursuant to 7 U.S.C. § 21(j). The NFA, a private corporation registered as a futures association under the Act, has been delegated the registration function by the CFTC.

In 1985, O'Brien, an Illinois corporation registered as a futures commission merchant, entered into a clearing agreement with the Sage Group, Inc., an independent introducing broker under the Act. Pipkin, a California resident, was the president and principal stockholder of Sage and registered as an associated person. According to the agreement, O'Brien cleared the trades for all customers introduced to it by Sage. That arrangement terminated in June 1990 and Sage declared bankruptcy in December 1990. O'Brien, however, claimed that after Sage's bankruptcy it paid approximately $172,000 to satisfy complaints against it by customers introduced by Sage. It asserted that Pipkin was personally responsible to indemnify O'Brien for this amount. Since O'Brien and Pipkin were both registered with the NFA and subject to its rules, O'Brien filed a de-

mand for arbitration against Pipkin in June 1992 under the NFA's Member Arbitration Rules which require associated persons to arbitrate disputes with members. Pipkin filed an answer challenging the NFA's jurisdiction to conduct the arbitration, but the matter was allowed to proceed. The ensuing arbitration resulted in an award of $82,000 in O'Brien's favor.

On May 26, 1993, O'Brien filed a petition in the district court for an order confirming the arbitration award. Pipkin responded by moving to vacate the award, arguing that the NFA had no authority to impose arbitration upon him and its actions in doing so violated the due process clause of the Fifth Amendment. He also argued that one of the panelists was not selected in accordance with the NFA's rules. The district court confirmed the arbitration award, finding that the NFA performed the arbitration proceeding as authorized and in accordance with its rules, and that it was not a government actor and therefore could not have deprived Pipkin of his constitutional rights by requiring arbitration. Pipkin filed a timely notice of appeal.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

This appeal requires us to decide two legal questions: (1) whether Pipkin consented to submit his dispute with O'Brien to the NFA when he signed the registration form and, if so, whether that consent was obtained through a denial of due process; and (2) whether the NFA's arbitration panel was selected in accordance with its own rules. This decision involves an interpretation of the Act, CFTC regulations, and NFA requirements. Thus, our standard of review is the same as the district court. *Moseley, Hallgarten, Estabrook & Weeden v. Ellis,* 849 F.2d 264, 267 (7th Cir.1988); *see Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1113 (3d Cir.1993). We will vacate the arbitration award if "the arbitrators exceeded their powers" in deciding this case. 9 U.S.C. § 10(a)(4); *Eljer Mfg., Inc. v. Kow-*

---

1. We granted O'Brien's motion to adopt the NFA's brief as amicus curiae on appeal. The NFA also participated in the oral argument in this case.

*in Dev. Corp.,* 14 F.3d 1250, 1253 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994).

## A. NFA's authority to impose arbitration

### 1. Pipkin's consent to submit to arbitration

■ Pipkin argues that he did not consent to arbitrate all member-associate disputes before the NFA when he registered to be an "associated person" under the Act. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Miron Constr. Co., Inc. v. International Union of Operating Eng'rs,* 44 F.3d 558, 562 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1824, 131 L.Ed.2d 746 (1995).

The Form 8–R application for registration as an associated person under the Act and as an Associate in the NFA, which Pipkin signed, states that "execution and delivery of this application shall constitute … an express agreement by me that, if registered as an Associate, I shall become and remain bound by all NFA requirements as then and thereafter in effect." Under Article XVII(u) of the NFA's Articles of Incorporation and Rule 1–1(q) of the NFA's Compliance Rules, "Requirements" is defined as "any duty, restriction, procedure, or standard imposed by a charter, bylaw, rule, regulation, resolution, or similar provision." One of these requirements, adopted on May 1, 1992, is the NFA's "Member Arbitration Rules." Under § 2(a) of these rules, "disputes between and among Members and Associates shall be arbitrated under these Rules upon the filing of a Demand by a Member or Associate." Thus, in signing the Form 8–R, Pipkin consented to mandatory arbitration of his dispute with O'Brien before the NFA.[2]

■ Pipkin protests that the language in the Form 8–R is too ambiguous to provide his consent. Unlike the registration forms in the securities field, *see Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 23, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991), the NFA and CFTC forms do not specifically mention arbitration. A contract, however, need not contain an explicit arbitration clause if it validly incorporates by reference an arbitration clause in another document. *See Geldermann, Inc. v. CFTC,* 836 F.2d 310, 318 (7th Cir.1987), *cert. denied,* 488 U.S. 816, 109 S.Ct. 54, 102 L.Ed.2d 33 (1988); *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional,* 991 F.2d 42, 48 (2d Cir.1993); *United States Fidelity & Guar. Co. v. West Point Constr. Co., Inc.,* 837 F.2d 1507, 1508 (11th Cir.1988); *Maxum Foundations, Inc. v. Salus Corp.,* 779 F.2d 974, 978 (4th Cir.1985). In *Geldermann,* we held that "a · written agreement to observe and be bound by the Charter, Rules and Regulations of the Association, and all amendments subsequently made thereto" constituted a consent to be bound by arbitration procedures later adopted by the Association. *Id.,* 836 F.2d at 318.

Pipkin counters that the phrase "all NFA requirements" was too vague to incorporate the Member Arbitration Rules. He argues that, while it would subject members of the NFA to such requirements, associates could only expect to be bound by those requirements the NFA was specifically authorized to impose by the Act, such as proficiency and compliance requirements authorized by § 21(p). Even if such a broad phrase as "all NFA requirements" could be so construed, Pipkin's argument ignores §§ 12a(10) and 21(*o* )'s blanket delegation of authority to the NFA to perform the registration function in accordance with its rules as approved by the CFTC. Thus, an associated person could not assume that the NFA's requirements were limited in any way by those specified in the

---

**2.** In ¶ 13(b) of Pipkin's Fully Disclosed Clearing Agreement with O'Brien, the parties did consent to arbitration of any disputes arising from the agreement, but the forum was stipulated to be the American Arbitration Association. Since this dispute involved allegations of misconduct which went beyond the scope of the agreement, howev-

er, O'Brien never pursued a demand for arbitration in that forum. The NFA agreed that arbitration of the dispute was thus not contrary to § 2(1) of the Member Arbitration Rules which excludes from mandatory arbitration disputes for which the parties have committed themselves to another forum.

Act.[3] Nor can an associated person take refuge in Pipkin's suggestion that the word "requirements" in the Form 8–R is distinguished from the defined term "Requirements" in the Articles of Incorporation and Compliance Rules by the absence of a capital "R." This is a distinction without a difference. Nowhere in the text of the Articles of Incorporation, Bylaws or other rules does the NFA use the word "requirements" with a capital "R." The phrase "all NFA requirements" is sufficiently comprehensive to prevent Pipkin from complaining that he could not discern which NFA mandates actually applied to him.

Moreover, the Form 8–R clearly indicated that the application to obtain registration as an associated person also constituted an application for registration as an NFA Associate. According to the definition of "Associate" in the Member Arbitration Rules, "every person who is associated with a Member within the meaning of the term 'associated person' as used in Section 4k of the Commodity Exchange Act, and who is required to register as such with the Commission, must register with NFA as an Associate." Thus, the arbitration requirement applies to Pipkin independent of whether the Form 8–R was sufficient to incorporate the rules.

Finally, Pipkin argues that the Form 8–R could not have bound him to submit to arbitration because it was "nonnegotiable" and therefore, the argument implies, a contract of adhesion. In order for Pipkin to continue in his position as president of Sage he had to register as an associated person under the Act and therefore subject himself to the NFA's requirements. Such an argument, however, has already been addressed and rejected by this court in *Geldermann*. In order to continue in its business as a commodity brokerage firm, Geldermann had to accept the Chicago Board of Trade's ("CBOT") rules and regulations, including its arbitration rules. *Id.*, 836 F.2d at 317. We held that this dilemma "has no impact on the question of Geldermann's consent to follow all of the rules of the CBOT, including the arbitration rules." *Id.* at 318. Geldermann's choice to become a member of the CBOT was sufficient alone to evidence its consent. Pipkin distinguishes *Geldermann* by arguing that the CBOT is a voluntary association while registering with the NFA is mandatory under the Act. This ignores the holding of *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 592, 105 S.Ct. 3325, 3339, 87 L.Ed.2d 409 (1985), as interpreted by this court in *Geldermann*, 836 F.2d at 317. *Thomas* involved the data-sharing provisions of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). As a precondition to registration of a pesticide, manufacturers were required to submit their research data to avoid duplication of efforts. A scheme was established to share the costs of compiling this research. When conflicts developed over the amount of compensation, Congress imposed a system of mandatory arbitration. A refusal to participate could result in the denial or cancellation of the registration for a pesticide. As this court summarized in *Geldermann*, "under FIFRA, an applicant has the option of participating in the arbitration scheme or going out of business. Yet despite this economic compulsion, the Supreme Court held that 'the follow-on registrant ... explicitly consents to have his rights determined by arbitration.'" *Id.*, 836 F.2d at 318 (quoting *Thomas*, 473 U.S. at 592, 105 S.Ct. at 3339). Thus, the mandatory nature of Pipkin's registration with the NFA does not obviate his consent to submit to its arbitration procedures.

---

**3.** Pipkin also argues that the CFTC's issuance of a regulation which explicitly authorized member-member arbitration in contract markets justifies refusing to recognize such arbitration procedures in the instant case where no such regulation was issued. *See* 17 C.F.R. § 180.5. This ignores the special status accorded to contract markets by Congress. 7 U.S.C. § 7a(12)(A), which outlines the procedure for CFTC review of a contract market's rules, states that "[a]t least thirty days before approving any rules of major economic significance, as determined by the Commission, the Commission shall publish a notice of such rules in the Federal Register." No such requirement is included in 7 U.S.C. § 21(j), which outlines the procedure for CFTC approval of a registered futures association's rules. Indeed, the CFTC's explicit approval of member-member arbitration in contract markets only strengthens the NFA's case that its Member Arbitration Rules are consistent with the other provisions of the Act.

## 2. Due process claims

Pipkin's real complaint is not that the NFA registration form was insufficient to indicate his consent to submit to arbitration, but instead that this consent was obtained unconstitutionally. He argues that the NFA restricted his Fifth Amendment due process right to pursue his chosen occupation. *Greene v. McElroy,* 360 U.S. 474, 491–92, 79 S.Ct. 1400, 1410–11, 3 L.Ed.2d 1377 (1959); *see Nowicki v. Cooper,* 56 F.3d 782, 785 (7th Cir.1995); *Bernard v. United Township High School District No. 30,* 5 F.3d 1090, 1092 (7th Cir.1993). The district court rejected this argument on the ground that the NFA is not a government actor.

■ We agree with Pipkin that the NFA was a government actor in performing the registration function. The NFA admits that it has been delegated the registration function by the Federal Government. Thus, this case is distinguishable from the case relied upon by the district court, *Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 186 (7th Cir.1984), where we concluded that the Chicago Mercantile Exchange, although heavily regulated, was not a government actor because it performed no function on behalf of the government as its agent. The NFA argues, however, that its agency capacity is limited to the registration function while its requirement that applicants submit to NFA rules and regulations is in its capacity as a private association. *See United States v. Solomon,* 509 F.2d 863, 867–69 (2d Cir.1975) (NASD was not performing a government function when it investigated its members for violations of its own rules); *Weinberg v. CFTC,* 699 F.Supp. 808, 814 (C.D.Cal.1988), *aff'd.* 884 F.2d 1396 (9th Cir.1989) (NFA not subject to the Fifth Amendment privilege against self-incrimination when it conducts an investigation for a violation of its own rules). In these cases, the government's regulations merely serve to bolster the private association's enforcement of its own rules. By contrast, the NFA imposes its own rules as a precondition to registration under the Act. These rules have become a part of the

registration function in the same fashion as the requirement that an applicant reveal certain information about his or her criminal history under § 12a(2) of the Act. Although the NFA may not be a government actor when it conducts the arbitration proceeding, it certainly is when it requires an applicant to agree to submit to the arbitration rules in order to register under the Act.

■ Pipkin's due process claim stumbles, however, on the question of whether the NFA has actually violated his rights by conditioning registration upon the agreement to abide by its requirements. He argues that the NFA's adoption of the Member Arbitration Rules is an unauthorized attempt to impose its own private agenda on the registration function. Even if we assume that this is enough to constitute a violation of due process, *see Bigby v. City of Chicago,* 766 F.2d 1053, 1057 (7th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986), Pipkin has not established that the NFA's imposition of its own rules was unauthorized. Under the Act, Congress anticipated that the NFA would conduct the registration function in accordance with its own rules. Section 21(*o*)(1) provides that the NFA will perform "any portion of the registration functions under this chapter ... with respect to each associated person of such member, in accordance with rules, notwithstanding any other provision of law, adopted by such futures association and submitted to the Commission pursuant to subsection (j) of this section." In § 21(j), Congress provided a method by which all of the NFA's rules would be submitted to it for approval or review. Under this section, an addition to a registered futures association's rules may be submitted to the CFTC. If the CFTC "does not approve or institute disapproval proceedings with respect to any rule within one hundred and eighty days after receipt ... such rule may be made effective by the registered futures association." According to a Declaration from the NFA, its Member Arbitration Rules were approved by the CFTC on February 18, 1992.[4] Thus, the NFA's re-

---

4. Thus, Pipkin's argument that the CFTC could not have approved the Member Arbitration Rules without issuing an order or regulation (assuming

the argument was not waived) is without merit. Congress specifically provided a procedure in § 21(j) whereby the CFTC could effectively ap-

quirement that registrants under the Act submit to mandatory arbitration was not an unauthorized and arbitrary act which constituted a denial of Pipkin's Fifth Amendment right to due process.

### B. The NFA's appointment of the arbitration panel

■ Under 9 U.S.C. § 10(a)(4), we are obligated to vacate an award where the arbitrators exceeded their powers in deciding the case. The arbitrators' powers are derived from the parties' agreement. *AT & T Technologies, Inc.,* 475 U.S. at 648, 106 S.Ct. at 1418. Thus, in order to enforce an arbitration award, the arbitrator must be chosen in conformance with the procedure specified in the parties' agreement to arbitrate. *Tamari v. Conrad,* 552 F.2d 778, 781 (7th Cir.1977). *Accord Cargill Rice v. Empresa Nicaraguense Dealimentos,* 25 F.3d 223, 226 (4th Cir.1994); *Szuts v. Dean Witter Reynolds, Inc.,* 931 F.2d 830, 832 (11th Cir.1991); *Avis Rent A Car System v. Garage Employees Union,* 791 F.2d 22, 25 (2d Cir.1986). A "trivial departure" from the parties' agreement, however, may not bar enforcement of an award. *Id.,* 791 F.2d at 25.

■ Pipkin contends that one of the arbitrators was not chosen in conformance with the selection procedure outlined in the Member Arbitration Rules. Section 3(a) of the Rules provides that arbitration proceedings "shall be conducted before an arbitration panel consisting of three NFA Members or individuals connected therewith." One of the arbitrators selected for Pipkin's arbitration, Donald Weiss, was not an NFA Member, but performed more than 50% of his work on behalf of NFA Members. Pipkin charges that this does not conform with the NFA's previous interpretation of the "connected therewith" language which required 50% of the work to be performed on behalf of *one* NFA member. This prior interpretation, however, was merely for the benefit of staff and was neither published nor made with anything akin to notice and comment proce-

dures.[5] Thus, we cannot say that it had become a part of the Member Arbitration Rules or the parties' agreement to arbitrate. Since the selection of the arbitrators fully conformed with § 3(a), the arbitrators did not exceed their powers in settling this dispute.

### III.

For the reasons above, the decision of the district court is AFFIRMED.

ROVNER, Circuit Judge, dissenting.

I agree with the majority that if Pipkin consented to arbitration, his consent was not obtained through a denial of due process. And I agree with the majority that if Pipkin consented to arbitration, the members of the arbitration panel were properly selected. But Pipkin never consented to arbitration. The agreement that Pipkin signed did not constitute a clear and unambiguous consent to arbitrate, and it did not incorporate by reference any other document containing an arbitration clause. All of the parties agree that courts will not find an agreement to arbitrate in the absence of a clear and unambiguous consent to arbitration. *See Brief of Amicus Curiae* at 5 ("NFA does not dispute the general principle that courts will not find a contract to arbitrate in the absence of a clear and unambiguous consent to arbitration"). *See also Flood v. Country Mutual Ins. Co.,* 41 Ill.2d 91, 94, 242 N.E.2d 149, 151 (1968) ("parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate"). All of the parties also agree that the Form 8–R signed by Pipkin contained no arbitration clause. But the majority decides today that the phrase "if registered as an Associate, I shall become and remain bound by all NFA requirements as then and thereafter in effect" incorporates by reference an arbitration clause in another document.

Yet the Form 8–R does not mention any other such document, much less incorporate it by reference. The majority, however,

---

prove an NFA rule without taking any action whatsoever.

**5.** In fact, Kathryn Camp, counsel for the NFA, admitted at oral argument that these interpretations were usually made by her and committed to paper without further discussion.

reaches its conclusion by referring to NFA's Articles of Incorporation and NFA's Compliance Rules, neither of which are mentioned anywhere on the Form 8–R. From these documents, the majority extracts a definition of the word "Requirements," and applies that definition to the word "requirements" on the Form 8–R, as if it were a defined term. The Articles of Incorporation and the Compliance Rules define "Requirements" as "any duty, restriction, procedure, or standard imposed by a charter, bylaw, rule, regulation, resolution, or similar provision." This definition, the majority then states, encompasses the NFA's Member Arbitration Rules. And these, in turn, require Associates and Associated Persons like Pipkin to submit to arbitration. Three documents which are not even mentioned in the Form 8–R can hardly be incorporated by *reference*.

The majority's conclusion is especially astonishing in light of the fact that the NFA conceded at oral argument that nothing on the Form 8–R indicates that "requirements" is a defined term, that "requirements" is not defined on the Form 8–R itself, and that the Form 8–R does not mention any of the documents the NFA claims are incorporated. Instead, the NFA argued that when a person wants to do business in a highly regulated industry, that person "understands" that there are other documents he needs to read when he registers. A general understanding that other documents may exist is no substitute for the clear and unambiguous consent to arbitrate required by the case law. The majority's reasoning constitutes a substantial departure from the established rule.

Furthermore, in every case on which the majority relies, the incorporation by reference is just that—the document signed contains an explicit reference to another document that contains the arbitration clause. There is no explicit reference here. There is not even an implicit reference. Nothing in the Form 8–R even clues in the signatory to the defined meaning of the word "requirements." As noted above, the NFA concedes that the definition is contained in a document that is not even mentioned in the Form 8–R.

The majority also relies on *Geldermann, Inc. v. Commodity Futures Trading Com'n*,

836 F.2d 310 (7th Cir.1987), a case where membership in a voluntary association confers the obligation to arbitrate disputes. However, Pipkin is not a member of the NFA, and this case does not apply to him. He is merely associated with the NFA, and as such, the NFA admits he is not subject to the same requirements as members. He need not pay dues, for example. NFA implicitly admits, therefore, that the word "requirements" is subject to more than one meaning. Thus, the word "requirements" as it appears in the Form 8–R is at best ambiguous. Ambiguities in a contract are to be construed against the drafter, in this case the NFA. *See Epstein v. Yoder*, 72 Ill.App.3d 966, 29 Ill.Dec. 169, 175, 391 N.E.2d 432, 438 (Ill.App. 1st Dist.1979). In short, Pipkin never clearly and unambiguously consented to arbitration. I respectfully dissent.