**Richard BROOK**

v.

**PEAK INTERNATIONAL LTD.**

**No. Civ. A–00–CA–697 JRN.**

United States District Court,
W.D. Texas,
Austin Division.

Feb. 22, 2001.

ernmental entity. *See Federation of African American Contractors,* 96 F.3d at 1215.

Dawn B. Finlayson, Jackson, Walker, L.L.P., San Antonio, TX, Thomas Matthew Lipovski, Jackson Walker, L.L.P., Austin, TX, for Richard Brook, plaintiff.

John N. McCamish, Jr., McCamish & Socks, P.C., San Antonio, TX, for Peak International Ltd., defendant.

### *REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

NOWLIN, Chief Judge.

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended, effective 1 January 1994.

On 2 January 2001, the United States District Court referred all pending and future dispositive motions to the Magistrate Court (Clerk's Docket No. 22). Before the Court is Plaintiff's Motion to Vacate Arbitration Award and Brief in Support filed on 31 October 2000 (Clerk's Docket No. 2); Defendant's Response to Richard Brook's Motion to Vacate Arbi-

tration Award and Brief in Support filed on 13 November 2000 (Clerk's Docket No. 6); Defendant's Application for Confirmation of Arbitration Award and for Entry of Judgment filed on 13 November 2000 (Clerk's Docket No. 7); Plaintiff's Response to Defendant's Application for Confirmation of Arbitration Award and for Entry of Judgment filed on 1 December 2000 (Clerk's Docket No. 11); Plaintiff's Reply to Defendant's Response to Motion to Vacate Arbitration Award filed on 1 December 2000 (Clerk's Docket No. 12); Defendant's Reply to Plaintiff's Response to Defendant's Application for Confirmation of Arbitration Award filed on 8 December 2000 (Clerk's Docket No. 14); Defendant's Surresponse to Plaintiff's Reply on His Motion to Vacate filed 8 December 2000 (Clerk's Docket No. 15); Plaintiff's Surreply to Defendant's Surresponse to Plaintiff's Reply on His Motion to Vacate filed 19 December 2000 (Clerk's Docket No. 19); Defendant's Response to Plaintiff's Surreply on His Motion to Vacate filed 22 December 2000 (Clerk's Docket No. 20); Plaintiff's Supplement to Motion to Vacate Arbitration Award filed 26 January 2001 (Clerk's Docket No. 23); Defendant's Response to Plaintiff's Supplement to Motion to Vacate Arbitration Award filed 5 February 2001 (Clerk's Docket No. 24); and Plaintiff's Reply to Defendant's Response to Plaintiff's Supplement to Motion to Vacate Arbitration Award filed 9 February 2001 (Clerk's Docket No. 25). The Court heard oral argument from both parties during a motions hearing held on 17 January 2001.

## I. GENERAL BACKGROUND

On 31 October 2000, Plaintiff Richard Brook ("Brook") moved this Court to va-cate an arbitration award entered in favor of Defendant Peak International Ltd. ("Peak"). Peak subsequently moved this Court to confirm the arbitration award and to enter judgment. The dispute necessitating arbitration arose when Peak terminated Brook's employment as President and Chief Operating Officer. The arbitration at issue was conducted pursuant to the terms of the Employment Agreement between Brook and Peak. The arbitrator, Judge Chuck Miller, awarded $895,793 to Peak and approximately $390,000[1] to Brook resulting in a net award to Peak of approximately $500,000.

Brook complains of, *inter alia,* the process that was employed to select Judge Chuck Miller as the arbitrator. The Employment Agreement, in relevant part, provides as follows:

In the event the parties are unable to agree on an arbitrator, the Employee and the Company shall request the American Arbitration Association to submit a list of nine (9) names of persons who could serve as an arbitrator. The Company and Employee shall alternatively remove names from this list (beginning with the party which wins a flip of a coin) until one person remains and this person shall serve as the impartial arbitrator.

In May 1999, Brook filed a demand for arbitration with the American Arbitration Association ("AAA"). (Plaintiff's Appendix I, Volume I, Exhibit 1.) On 18 May 2000, the AAA submitted its list of nine arbitrators to the parties and stated that "[i]n selecting the arbitrator, the parties are to follow the procedure as outlined in their [Employment Agreement]." (Pl.'s App. I,

---

1. The parties do not agree on the exact amount as the award included two different interest components. Nevertheless, in light of the ruling reached by the Court, the exact amount need not be determined.

Vol. I, Ex. 2.) Brook struck one individual from the list and also suggested that if the arbitration was to be held in Austin it would make more sense to review a panel of nine arbitrators based in the Austin area. (Pl.'s App. I, Vol. I, Ex. 3.) Peak agreed with this idea and, accordingly, did not submit a strike. (Pl.'s App. I, Vol. I, Ex. 4.)

On 9 June 1999, the AAA submitted a second list of seven names to the parties that was "supplemental to the list previously provided." (Pl.'s App. I, Vol. I, Ex. 5.) The AAA instructed the parties to "strik[e] the name of any unacceptable arbitrator" from the list of seven[2] and then to "indicate your order of preference by number" and then to return the list by 21 June 1999.[3] (Pl.'s App. I, Vol. I, Ex. 6.) Brook timely complied by striking two names from the list and by ranking the remaining five arbitrators. (Pl.'s App. I, Vol. I, Ex. 6.) Brook ranked University of Texas School of Law Professor David Simon Sokolow first and Judge Chuck Miller last. (Pl.'s App. I, Vol. I, Ex. 6.) Peak did not submit a timely list of strikes and rankings.

On 26 July 1999, the AAA appointed David Simon Sokolow as arbitrator from the "list returned by the Claimant." (Pl.'s App. I, Vol. I, Ex. 9.) On 29 July 1999, Peak objected to the appointment of Professor Sokolow[4] and apparently submitted a late list of strikes and rankings based on the AAA's 9 June 1999 list. (Pl.'s App. I, Vol. I, Ex. 10.) On 4 August 1999, Peak further objected to the appointment of Professor Sokolow. (Pl.'s App. I, Vol. I, Ex. 12.) Peak quotes the language dealing with the selection of the arbitrator from the Employment Agreement, reproduced above, and states "[t]his procedure is mandatory, not voluntary." (Pl.'s App. I, Vol. I, Ex. 12.) Peak's letter continues by stating that "[t]he agreement clearly states that the parties 'shall' request a list of nine names, not the parties 'may' request a list of nine names. This procedure was not followed in the appointment of Mr. Sokolow. Thus his appointment violates both the Employment Agreement and the AAA's own rules."[5] (Pl.'s App. I, Vol. I, Ex. 12.) Peak then requests that the AAA submit two additional candidates and requests that the procedure set out in the Employment Agreement be followed for the selection of a new arbitrator. (Pl.'s App. I, Vol. I, Ex. 12 .)

On 11 August 1999, the AAA sent a letter to the parties stating that "[f]rom the arbitrators list returned by the parties

2. Even though the 9 June 1999 list of seven arbitrators was supposed to be "supplemental," only the new list of seven arbitrators was included on the form instructing the parties to strike unacceptable arbitrators and then to rank the remaining arbitrators.

3. The AAA warned the parties that failure to comply with the 21 June 1999 deadline "may" result in all names "be[ing] deemed acceptable."

4. The 29 July 1999 letter states that an associate from Peak's counsel's law firm, McCamish & Socks, had taken a summer school class from Professor Sokolow in Innsbruck, Austria during the summer of 1993. The letter states that "Peak wishes to avoid any conflicts and

even the slightest appearance of impropriety." In a 30 July 1999 letter, Brook notes the Peak objection to Professor Sokolow and "specifically agrees to stipulate that he will not seek to overturn a ruling in Peak's favor based on allegations that this associate was a former student of Mr. Sokolow."

5. Earlier in the letter Peak noted that Rule 11(a)(i) of the AAA's National Rules for the Resolution of Employment Disputes states that "[a]rbitrators serving under these rules shall be experienced in the field of employment law." Peak then asserts that "Mr. Sokolow has no stated experience in employment law and, therefore, his appointment is in violation of Rule 11(a)(i)."

the Association has appointed Judge Chuck Miller." (Pl.'s App. I, Vol. I, Ex. 14.) No further explanation was offered. In a letter dated 13 August 1999, Brook states that he "hereby object[s] to the process used in the selection of the arbitrator." (Pl.'s App. I, Vol. I, Ex. 15.) Apparently, the AAA did not sustain Brook's objection as Judge Miller remained the arbitrator throughout the arbitration proceedings.[6]

## II. MOTION TO VACATE ARBITRATION AWARD

■ Plaintiff Brook has invoked the jurisdiction of this Court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16 (1999). The FAA allows the district court to vacate any arbitration award where the arbitrator exceeds his power. 9 U.S.C. § 10(a)(4) (1999). Brook contends that the arbitrator had no power to arbitrate this dispute because he was not selected in the manner prescribed by the Employment Agreement. The Court agrees. Accordingly, the Court RECOMMENDS that the district court VACATE the arbitration award.

■ Arbitration is a matter of contract. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("Arbitration . . . is a matter of consent, not coercion"). "The power and authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed." *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir.1991); *see also Cont'l Materials Corp. v. Gaddis Mining Co.*, 306 F.2d 952, 954 (10th Cir.1962); *AT & T Technologies, Inc.*, 475 U.S. at 648, 106 S.Ct. 1415. In addition, the FAA states that if a method of selecting the arbitrator is provided for in the agreement between the parties, "such method *shall* be followed." 9 U.S.C. § 5 (1999) (emphasis added); *see also Cargill Rice Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223, 225 (4th Cir.1994) (stating that section 5 of the FAA requires the courts to ensure that the parties agreed method of selecting an arbitrator is followed). Accordingly, arbitrators are without power to arbitrate a dispute when they are not chosen in accordance with the parties' arbitration agreement. *Cargill Rice, Inc.*, 25 F.3d at 226; *Szuts*, 931 F.2d at 831; *Avis Rent A Car Sys., Inc. v. Garage Employees Union, Local 272*, 791 F.2d 22, 26 (2nd Cir.1986); *R.J. O'Brien & Assoc., Inc. v. Pipkin* 64 F.3d 257, 263 (7th Cir. 1995); *Hugs & Kisses, Inc. v. Aguirre*, 220 F.3d 890, 893 (8th Cir.2000); *Tamari v. Conrad*, 552 F.2d 778, 781 (7th Cir.1977). Where arbitrators are without power to arbitrate a dispute, the FAA requires the award to be vacated upon application of any party to the arbitration. 9 U.S.C. § 10(a)(4) (1999); *Hugs & Kisses, Inc.*, 220 F.3d at 893; *R.J. O'Brien*, 64 F.3d at 263.

---

6. On 26 August 1999, Peak notified the AAA that it was "satisfied" with the selection of Judge Miller and that "Peak is willing to forego its complaints of the procedural irregularities that have occurred and proceed forward if Brook agrees to Mr. Miller as the arbitrator." The letter further states that "if Brook is unwilling to agree to this and continues to insist on the appointment of Mr. Sokolow, and if the AAA were to reappoint Mr. Sokolow, then Peak would continue to assert its complaint, outlined in our letter of August 4, 1999, that the entire appointment process to date has violated the terms of Brook's employment agreement and that Mr. Sokolow's appointment violated the AAA's Rules for Resolution of Employment Disputes."

In the instant case, the Employment Agreement clearly specified the manner in which the arbitrator of any dispute that arose would be selected. No aspect of the selection of Judge Miller as arbitrator conformed to the parties' agreement. Both Brook and Peak noted the deviations in the selection process and both objected to the deviations at different stages in the process. The Court is of the opinion that the FAA and the relevant case law require vacatur of the arbitration award. Defendant Peak raises several arguments to the contrary. The Court will now examine each of Peak's arguments in turn.

█ Primarily relying on the case of *Bernstein Seawell & Kove v. W.E. Bosarge*, 813 F.2d 726, 732 (5th Cir.1987), Peak contends that Brook was required to object to the arbitrator at the time of the arbitration hearing. The Court disagrees. In *Bernstein*, the appellant, Bosarge, was seeking vacatur of an arbitration award in favor of the appellee, Bernstein Seawell & Kove ("BS & K"). *Id.* at 728. BS & K had initiated the arbitration as provided for in the limited partnership agreement between the parties. *Id.* at 729. After Bosarge failed to respond to the arbitration notice, BS & K followed the exact procedures set out in the limited partnership agreement for selecting an arbitration panel when one party to the arbitration fails to participate in the selection process. *Id.* On appeal, Bosarge sought vacatur based on the "evident partiality or corruption on the part of one of the arbitrators."[7] *Id.* at 732. In response to this, the court

in *Bernstein* stated that "[a]ppellent had the obligation to make his objection to the *composition* of the arbitration panel at the time of the hearing." *Id.* (emphasis added).

*Bernstein* is inapplicable to the instant case. First, Bosarge complained of the composition of the arbitration panel due to the alleged partiality of one of the arbitrators. Objecting to the *composition* of an arbitration panel is different than objecting to the method of *selecting* the arbitrator and, as such, requires a different showing to support vacatur. *See, e.g., Sheet Metal Workers Int'l Ass'n v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir.1985) (stating that a party seeking vacatur of an arbitration award based on partiality of an arbitrator must prove the existence of facts establishing a reasonable impression of partiality). In the case *sub judice*, Brook is not complaining of Judge Miller *per se*, rather, he is objecting to the method in which Judge Miller was selected. Second, Bosarge did not object to the composition of the arbitration panel at *any* point prior to or during the arbitration hearing.[8] Bosarge's first objection to the arbitration panel was during the suit brought by BS & K to confirm the arbitration award pursuant to the FAA. *See Bernstein*, 813 F.2d at 729. In the instant case, Brook objected to the selection process prior to the arbitration hearing. This Court is not prepared to require more in order to preserve an objection to the method of selecting an arbitrator.[9]

---

**7.** One of the three arbitrators had, at one time, owned a fractional share of Bosarge's partnership interest and had received commissions on the sale of limited partnership interests. *Bernstein*, 813 F.2d at 732.

**8.** Bosarge did not participate in the arbitration in any way. *See Bernstein*, 813 F.2d at 732.

**9.** The court in *Avis* described a similar argument as being "without merit." 791 F.2d at 26. Stating that Avis's protests were clear, the court rejected the notion that Avis waived its objections to the method used to select the arbitrator by appearing before him without seeking a stay of arbitration. *Id.; see also Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1510 (3rd Cir.1994) (stating that a "party does not have to try to enjoin or stay

■ Next, Peak argues that a "trivial departure" from the agreed method for selecting an arbitrator does not support vacatur of an arbitration award. While it is true that the relevant case law mentions this proposition,[10] Peak does not cite a single case where a departure from the agreed method of selecting an arbitrator was found to be "trivial" and, as such, did not support the vacatur of the resulting arbitration award. Nevertheless, the Court cannot agree that the departure in this case was "trivial." In fact, the Court cannot find *any overlap at all* between the "process" actually used in selecting Judge Miller and process contemplated in the parties' Employment Agreement. In other words, there was a *complete departure* from the agreed selection method. This resulted in the selection of an arbitrator who would not have been selected had the agreed procedure been followed and tipped Brook's hand as to his first choice for an arbitrator.[11]

■ Finally, Peak maintains that, in order to support vacatur, a departure from the agreed selection process must result in a "fatally flawed arbitration proceeding." Stated differently, Peak wants the Court to require Brook to show some prejudice resulting from the flawed selection process.[12] Peak cites no case law that directly supports this proposition. The reason Peak cites no case law for this proposition is that this is an *impossible* showing for Brook to make. No party could show prejudice *solely* from a deviation in the agreed method used to select an arbitrator.[13] Such a showing would basically require that, had the agreed method for selecting the arbitrator been followed, the complaining party would have obtained a more favorable award from the properly selected arbitrator than the award actually rendered by the improperly selected arbitrator.

### III. RECOMMENDATION

Based upon the foregoing, the Court finds that method of selecting the arbitrator in the Brook v. Peak arbitration was in contravention of the Employment Agree-

---

an arbitration proceeding in order to preserve its objection" to the arbitrator's jurisdiction and that "where a party objects to arbitrability but nevertheless voluntarily participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred"). Brook's objection to the method of selecting the arbitrator is basically an objection to the jurisdiction of the arbitrator. *See Cargill Rice, Inc.*, 25 F.3d at 226; *see also* BLACK'S LAW DICTIONARY 855 (7th ed.1999) (defining jurisdiction as "[a] court's power to decide a case or issue a decree").

**10.** *See Avis*, 791 F.2d at 25; *R.J. O'Brien*, 64 F.3d at 263.

**11.** Brook ranked Professor Sokolow first and Judge Miller last in the initial ranking. When Peak failed to timely submit its list of rankings, Professor Sokolow was selected solely on the basis of being ranked first by Brook. Therefore, Peak was aware that Professor Sokolow was Brook's first choice. Peak ob-

jected to the selection of Professor Sokolow which resulted in the in the seemingly arbitrary appointment of Judge Miller. Being ranked last by Brook, it is apparent to the Court that Judge Miller was selected only as a result of the procedural irregularities.

**12.** To the contrary, the rationale of the *Avis* court suggests that, in order to avoid the effect of the arbitrator selection clause of the Employment Agreement, the burden is on Peak to show that the effect of that clause "would have been unfair or unreasonable." *See Avis*, 791 F.2d at 25–6. The policy behind the *Avis* court's rationale is an acknowledgment of the contractual, consensual nature of arbitration discussed above.

**13.** This assumes that parties would not agree on a method of selecting an arbitrator that, *on its face*, would prejudice one party (e.g., agreeing to select one party's sibling or spouse as the arbitrator, allowing one party to unilaterally select the arbitrator, etc.).

ment between the parties and that Brook objected to the deviation in a timely fashion. The Magistrate Court therefore RECOMMENDS that the district court GRANT Plaintiff Brook's Motion to Vacate Arbitration Award and DENY Defendant Peak's Application for Confirmation of Arbitration Award and for Entry of Judgment.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir.1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected—to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150–53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc).

The Clerk is ORDERED to mail each Party a copy of this Report and Recommendation by certified mail, return receipt requested.