Raw Silk Trading Co., Inc., Plaintiff, *v.* Kaltenbach & Stephens, Inc., Defendant.

First Department, February 10, 1922.

Sales — action by seller for purchase price of raw silk which had not been tendered because of refusal of buyer to accept on account of defective quality as shown by sample — contract governed by provisions of raw silk rules of Silk Association of America but fifteen-day limit for notice of defective quality not applicable since there was no specific notice that it should apply — evidence — defendant should have been allowed to show facts concerning his inspection and notice of rejection of goods and concerning their defective quality — plaintiff must prove goods merchantable and according to contract.

In an action for the purchase price of raw silk contracted to be sold to the defendant, the complaint was based upon two causes of action, the first upon a contract for the sale of seventy-five bales of Chuezen (or equal to), upon which contract forty-three bales only had been delivered; and the second upon a contract for the sale of fifty-five bales of Lucky Chop, of which only forty-five bales had been delivered. Each contract contained a provision that " Raw silk rules of the Silk Association of America are by this reference thereto made a part of this contract." The plaintiff notified the defendant that it was ready to deliver forty-two bales of Lucky Chop as a fullfillment of both contracts and sent two bales for examination. The defendant examined the two bales, claimed that they were defective and refused to accept the Lucky Chop so tendered in further performance of the contracts. The defendant set up a counterclaim to the complaint for the failure of the plaintiff to perform its part of the contract to deliver goods that were merchantable. The counterclaim was dismissed and a verdict directed for the plaintiff for the purchase price of the forty-two bales of Lucky Chop upon the ground that by the aforementioned rules any complaint of defect in quality must be made within fifteen days after receipt of the silk, the court refusing to allow the defendant to show that the silk was defective in quality.

*Held*, error; that while the said rules applied to and were a part of the contracts, although differences between the parties had not been submitted to arbitration as required by said rules, the fifteen-day limit is applicable only if the buyer is notified that said limit is to apply under a provision to that effect in the rules, and that, therefore, the question of reasonable notice by the defendant of defective quality in respect to the goods upon which the counterclaim was based should have been submitted to the jury after hearing the evidence of the defendant on that question; and that, as to the plaintiff's cause of action upon which a

verdict was directed, there was no tender made of the forty-two bales as the two bales delivered were for the purpose of a test and, hence, the defendant's evidence of the quality of the silk should have been received, as the plaintiff is not entitled to recover under either contract without proof that the goods were merchantable within the implied warranty existing upon the sale thereof, nor upon the first cause of action without proof that the Lucky Chop was equal to the Chuezen, provided the inspection and notice of rejection were reasonably prompt.

Motion by the defendant, Kaltenbach & Stephens, Inc., for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division, First Department, in the first instance after the direction of a verdict in favor of the plaintiff at the close of the case upon a trial before the court and a jury at the New York Trial Term in May, 1921.

*Samuel Seabury* of counsel [*Allen R. Memhard* and *George Trosk* with him on the brief], for the motion.

*Olcott, Bonynge, McManus & Ernst* [*Terence J. McManus* of counsel; *Joseph Glass* with him on the brief], opposed.

Smith, J.:

The seller is suing the defendant, the buyer, for the purchase price of goods contracted to be sold to the defendant, which were not tendered because of the refusal of the defendant to accept the said goods by reason of their defective quality. The complaint is based upon two causes of action, the first, a cause of action for the sale and delivery of seventy-five bales of Chuezen (or equal to) upon which contract forty-three bales had been delivered, leaving thirty-two bales undelivered under the contract. The second was upon a contract for the purchase and sale of fifty-five bales of certain raw silk called Lucky Chop, of which forty-five bales had been delivered and there remained undelivered thereupon ten bales. Further reference to the contracts themselves is unnecessary, except as to a provision contained in each of the contracts to the effect " Raw silk rules of the Silk Association of America are by this reference thereto made a part of this contract." The plaintiff notified the defendant that it was ready to deliver forty-two bales of Lucky Chop, claiming that the Lucky Chop was equal to Chuezen, so as to constitute a sufficient delivery both under the first and the second contract. Plain-

tiff sent to the defendant two bales of the Lucky Chop for examination, which bales were tested and as claimed by the defendant were found to be defective and not merchantable. Thereupon the defendant refused to accept the Lucky Chop that was tendered in further performance of the two contracts, and this action was brought to recover for the purchase price of the same, on the ground that the same was not readily salable in the market, and upon notice that the plaintiff held the same as bailee for the vendee under subdivision 3 of section 144 of the Personal Property Law (as added by Laws of 1911, chap. 571).

The defendant, while denying in its answer the right of the plaintiff to recover, has asserted a counterclaim for the failure of the plaintiff to perform its part of the contract to deliver goods that were merchantable. This counterclaim was dismissed and a verdict was directed in favor of the plaintiff for the purchase price of the forty-two bales of Lucky Chop, upon the ground that by the rules of the Silk Association of America any complaint of defect in quality was required to be made within fifteen days after receipt of the silk sold, and after having refused to permit the defendant to show that the silk was defective in quality, of which it is claimed notice was given to the plaintiff within a reasonable time.

The first question presented for discussion is whether the trial court properly held that the defendant was limited to making any claim for defect in goods tendered or delivered by not having made claim of the defect within fifteen days under the rules of the Silk Association. The trial court held that those rules applied and became a part of this contract, and such ruling in my judgment was entirely right. The defendant claims that those rules are not applicable in any way because those rules are made simply for the purpose of governing any determination " upon arbitration " between parties who are members of the association and who have made those rules a part of their contract. Both parties to this litigation were members of this association. These rules are prefaced as follows:

" Raw Silk Rules and Regulations To Govern Transactions Between Buyers and Sellers in the United States of America.

" Approved by the Board of Managers of the Silk Association of America, May 2̀2, 1908, and amended August 9, 1911.

" *Resolved,* That the amended Raw Silk Rules and Regulations to govern transactions between Buyers and Sellers on the Raw Silk Market, have been carefully considered by the Board of Managers of the Silk Association of America and approved by them.

" The Board feels justified in adopting them as rules to govern (in the absence of other special agreements), the adjudication of all disputes or claims which may be referred to the Arbitration Committee of the Silk Association of America for settlement."

Thereafter the rules are stated as " Raw Silk Rules and Regulations to Govern Transactions Between Buyers and Sellers." Following this statement are specific rules governing the transactions between the members in many technical details. Under the head of " Rejections and Replacements " is found the following statement:

" Rejections and Replacements. Any bales or lots rejected for proper cause must be replaced by Seller and accepted by Buyer within 15 days of rejection agreed to by Seller or established by arbitration. But where a lot of contract brand or quality and size is not obtainable on the New York market, the question shall be adjusted by arbitration. In case of a specified uninspected lot on a primary market — of which all or a portion shall prove upon inspection not of the stipulated quality and / or size — Seller must immediately notify Buyer, who shall have the option of cancelling such incorrect portion of the contract, or of instructing Seller to accept it with any allowance that he may be able to collect, or of giving the necessary time for replacement.

" Claims for Difference in Quality and / or size. Seller's obligations to deliver raw silk of contract quality and size is clearly defined. Buyer is under equal obligations to examine and test silk received, or tendered for delivery under contract, and promptly pass upon its quality and size as raw silk in the bale. This can be determined by testing sample skeins of the lot or one entire bale; Buyer must then accept, or immediately notify Seller of intention to reject the balance of the lot. All claims must be made within fifteen days after

delivery, or original tender of delivery, in accordance with terms of contract, even if the actual delivery of the silk be deferred by request of buyer. (Notice to this effect shall be inserted on contract or notice of tender of delivery.) After the above period of fifteen days, no claim shall be admissible unless false or fraudulent packing can be shown. In no case can the Seller be held as guaranteeing the working of the silk, or its suitability to produce certain results, unless by special agreement.

" Arbitration. All differences arising between Buyer and Seller must be submitted to the Arbitration Committee of the Silk Association of America."

There is nothing in the record to show why this matter was not submitted to arbitration. The question still remains, however, as to whether not having submitted the matter to arbitration, these rules are to be read into the contract governing the liabilities of the parties thereto. The resolution recited in the preamble to the rules that they should be binding in all arbitrations between its members is, I think, made upon the assumption that the parties will submit their matters to arbitration as is required by those rules themselves. The fair intendment of the provision in the contracts that the contracts shall be subject to these rules and regulations incorporates those rules and regulations governing the transactions between members as a substantial part of the contract itself, and this is true, even though the parties do not submit the matter to arbitration before the arbitration committee of the association. The construction I place upon this contract is within the reasonable contemplation of the parties, although upon the questions here for determination, as I construe these rules, I do not deem that it is very material so to hold to reach the conclusion at which I have arrived. It seems clear to me that this fifteen-day rule as the limit of time within which notice of defects must be given is not applicable to the case at bar. These rules require that " All claims must be made within fifteen days after delivery, or original tender of delivery, in accordance with terms of contract, even if the actual delivery of the silk be deferred by request of buyer," and then in parentheses follows: " Notice to this effect shall be inserted on contract or notice of tender of delivery." It seems clear

that the intention of the rule was to make this fifteen-day rule applicable *only* if the buyer be notified of an intent so to do in the contract itself or in the tender of delivery. No other construction seems to me possible in the case at bar. No notice to this effect was included in the contract, and no such notice was included in any attempted tender of delivery. The plaintiff must base the insufficiency of the rejection upon some other part of the rules or upon the common-law right to notice of defect within a reasonable time. It is elsewhere provided in the contract under " Claims for Difference in Quality," that the buyer is under equal obligations to examine and test silk received, or tendered for delivery under contract, and promptly pass upon its quality and size as raw silk in the bale. This can be determined by testing sample skeins of the lot or one entire bale; buyer must then accept, or immediately notify seller of intention to reject the balance of the lot. Assuming that the fifteen-day limit be not applicable and that these rules are a substantial part of the contract the buyer is, nevertheless, required to test the silk offered promptly and if found defective immediately to notify the seller of the defects. What time may be necessary to constitute prompt action on the part of the buyer depends upon all the circumstances of the case. The provision is to be reasonably construed and whether in the case at bar the testing of the silk was promptly done, was clearly a question of fact for the jury. The rule requiring giving of immediate notice does not require notice to be given upon the day or the hour that the test is found to be defective, but requires the notice to be given under a fair interpretation of the word " immediate," as the word would naturally be construed in such connection between those engaged in trade. A prompt notice, therefore, within a reasonable time in the light of the caution which the contract gives for reasonably quick action, is sufficient to satisfy the requirement of the rule and in this case was, I think, a question of fact for the jury. The rules of the association require prompt inspection and immediate notice of rejection. The Personal Property Law requires an inspection within a reasonable time and notice of rejection. The distinction between an inspection within a reasonable time and notice thereafter as required by the Personal Property Law and prompt inspection

and immediate notice as required by the rules is so vague that it becomes of little materiality as I have said whether the rights of the parties are governed by the Personal Property Law or by the rules of the association. In either case the inspection must be reasonably prompt and notice of rejection also must be reasonably prompt. As to the goods actually delivered upon which the defendant claims the right to counterclaim for defective quality, there is evidence to the effect that the defendant acted promptly, both in making the test and giving the notice of the defects. This statement perhaps requires some modification because the trial judge rejected most of the evidence in regard to the notice of those defects given on the ground that such notice was not given within the fifteen days which was required by the rules of the association as he interpreted them. This evidence should have been admitted, and the defendant's right to recover upon its counterclaim should be governed by the finding of the jury as to whether the defendant acted with reasonable promptness, both in making the test and in giving the notice of the defects found.

As to the plaintiff's cause of action upon which a verdict was directed, there was in fact no tender made of these forty-two bales upon the first contract and ten bales upon the second contract. Two bales were delivered and conceded to be representative of the other bales so held. They were delivered for the purpose of a test. These bales were tested by the defendant, who rejected them as inadequate on the first contract because not equal to Chuezen, and inadequate upon the second contract because of defective quality. As these bales were delivered for the specific purpose of a test, the question perhaps does not arise as to whether they were promptly tested and notice of defect promptly given. If that question were before us we should hold that that also was a question for the jury to pass upon. The defendant refused to accept any of these bales upon either of these contracts, which constituted an anticipatory breach of the contract, provided these goods met the required conditions of the contracts. The evidence that Lucky Chop was not equal to Chuezen and that these goods were defective was also excluded on the ground that notice was not given within fifteen days. We are of

opinion that that evidence should have been received and that the plaintiff is not entitled to recover under either contract without proof that these goods were merchantable within the implied warranty existing upon the sale thereof, nor upon the first cause of action without proof that the Lucky Chop was equal to the Chuezen, provided the inspection and notice of rejection were reasonably prompt.

Another ground is urged by the defendant for a reversal of this judgment, to wit, that these goods were held, not by the plaintiff, but by bankers under liens which they held for moneys advanced thereupon and that notice could not be given under subdivision 3 of section 144 of the Personal Property Law (as added by Laws of 1911, chap. 571) that the vendor held them as bailee for the vendee because they were not in the possession of the plaintiff. The evidence is not sufficient for us to determine the validity of this objection. Just what are the rights of the plaintiff and of the bank, or the plaintiff's vendors in China, is not clearly shown by the record. The question raised by the objection is a very important one involving practices in the trade, which question should only be determined upon full disclosure of the exact relations of the parties, and possibly of the customs in the trade which might influence our construction of the statute itself. This matter may be elucidated upon another trial of this action.

The exceptions must be sustained both as to the verdict directed and as to the dismissal of the defendant's counterclaim and the motion for a new trial granted, with costs to defendant to abide the event.

CLARKE, P. J., LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Exceptions sustained and motion for new trial granted, with costs to defendant to abide event. Settle order on notice.