John W. ILLYES, Jr., Plaintiff,

v.

JOHN NUVEEN & COMPANY, INC. John Nuveen & Company, Inc. Employees' Profit Sharing Plan Profit Sharing Plan Committee and Each of its Members, Including Michael G. Gaffney, Chairman, Anne T. Goetz, Larry W. Martin, Edmund T. Mehring, O. Walter Renfftlen, and Thomas Spalding, Defendants.

No. 96 C 2087.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 19, 1996.

L, Steven Platt, Arnold & Kadjan; Suzanne McCarthy, Chuhak & Tecson, P.C., Chicago, IL; and Laurie J. Wasserman, Law Offices of Laurie J. Wasserman, Skokie, IL, for Plaintiff.

Philip Luther Mowery, Edward C. Jepson, Jr., James Edwin Bayles, Jr., and Kelly A. Starr, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendants.

Jean Powers Camp, United States Equal Employment Opportunity Commission, Chicago, IL and Robert J. Gregory, Equal Employment Opportunity Commission, Washington, DC, for Amicus.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff John W. Illyes, Jr. has filed a ten count amended complaint against his former employer, John Nuveen & Company, Inc. ("Nuveen"), the Nuveen Profit Sharing Plan, the John Nuveen Profit Sharing Plan Committee, and each of its members, (jointly as the "PLan Committee"), alleging violations of various sections of the Employment Retirement Income and Security Act ("ERISA") (Counts I through III); violations of the Americans With Disabilities Act ("ADA") (Count IV); violations of the Age Discrimination and Employment Act ("ADEA") (Counts V and VI). In Count VII, plaintiff seeks a declaratory judgment that his claims are not subject to the mandatory arbitration rules of the National Association of Security Dealers ("NASD"). Counts VIII through X are state law claims against Nuveen for libel, intentional infliction of emotional distress, and false light. Defendants have moved to strike certain portions of the complaint and to dismiss or stay this action and compel arbitra-tion. For the reasons set forth below, defendants' motion to stay is granted in part, and the motions to strike and to compel arbitration are denied.

### FACTS

Defendant Nuveen is a member of the NASD, a self-regulated organization under Section 28(b) of the Securities Exchange Act of 1934 that regulates investment brokers and broker-dealers. 15 U.S.C. §§ 78bb(b)(1). On October 18, 1976, defendant hired plaintiff as a bond analyst. To be associated with a member of the NASD, plaintiff was required to and did execute a Uniform Application for Securities and Commodity Industry Representative and/or Agent (Form U–4) in March 1979. Defendant Nuveen has apparently filed two amendments to plaintiff's Form U–4, updating plaintiff's residential history and verifying that his registration remains current. Plaintiff did not sign any of those updates.

Defendant fired plaintiff on January 17, 1995. On February 16, 1995, defendant executed a Form U–5, which states that plaintiff was discharged for "unsatisfactory performance."

### DISCUSSION

To determine whether plaintiff's claims are arbitrable the court must determine: (1) whether there is an agreement to arbitrate; (2) whether the claims fall within the scope of the agreement; and (3) whether there was a waiver of the right to arbitrate. *Wojcik v. Aetna Life Insurance and Annuity Co.*, 901 F.Supp. 1282, 1286 (N.D.Ill.1995). "Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).

In the instant case, plaintiff challenges both the existence of any agreement to arbitrate, and assuming an agreement, whether his claims fall within the scope of the agreement. It is undisputed that plaintiff has no contract with his employer, Nuveen, that contains an arbitration clause. Nor does the

version of the Form U–4 that plaintiff signed in 1979 contain the standard arbitration provision contained in the current version.[1] The 1979 Form U–4 did contain, however, a compliance provision pursuant to which plaintiff agreed to:

> "Abide by the statute(s), constitution(s), rules and bylaws as any of the foregoing may be amended from time to time, or the agency, jurisdiction, or organization with or to which you are filing or submitting this application."

At the time plaintiff executed the Form U–4 the NASD had a code of arbitration procedures requiring arbitration of certain disputes. That code did not specifically provide for arbitration of disputes arising out of employment or termination of employment, and the Seventh Circuit has held that the code did not cover such disputes. See *Farrand v. Lutheran Brotherhood,* 993 F.2d 1253 (7th Cir.1993). After *Farrand,* however, the NASD amended its rules in October 1993 to specifically provide for arbitration of:

> "any dispute, claim, or controversy ... arising out of the employment or termination of employment of associated person(s) with any member."

It is this version of the NASD code that was in effect at the time Nuveen terminated plaintiff.

■ Plaintiff argues that because he never signed a document containing an arbitration clause, he had no agreement to arbitrate any dispute with defendants. Of course, a contract need not contain an explicit arbitration clause if it validly incorporates by reference an arbitration clause in another document. *R.J. O'Brien & Associates, Inc. v. Pipkin,* 64 F.3d 257 (citing *Geldermann Inc. v. CFTC,* 836 F.2d 310, 318 (7th Cir.1987)). Defendants counter that the Form U–4 that plaintiff signed incorporated by reference the NASD rules, which contained an arbitration clause. Therefore, according to defendants, plaintiff did in effect agree to arbitrate certain disputes, and he also agreed to arbitrate

any other disputes that the NASD required by later rule amendment.

The Seventh Circuit has twice addressed this exact issue. In *Geldermann,* the plaintiff, Geldermann, was a member of the Chicago Board of Trade ("CBOT"), a commodities exchange. Geldermann sued CBOT, the Commodities Futures Trading Commission ("CFTC") and a customer, seeking to enjoin the exchange from requiring Geldermann to arbitrate a dispute with the customer. As a precondition of membership in CBOT, Geldermann had signed a written agreement to "observe and be bound by the Charter, Rules and Regulations of the Association, and all amendments subsequently made thereto." Subsequent to Geldermann's signing of the agreement and its admission as a CBOT member, CBOT amended its rules to include Regulation 620.01(B). By its prior agreement, Geldermann consented to observe and be bound by the terms of Regulation 620.01(B), which unambiguously required Geldermann to arbitrate customer-initiated claims. In addition, CBOT Regulation 601.00 expressly provided:

> Arbitration of Customers' Claims and Grievances—The Board shall by regulation establish procedures in conformity with Section 5a(11) of the Commodity Exchange Act and Regulations thereunder for the settlement through arbitration of customers' claims and grievances against members and their employees. Every member, by becoming such, agrees to abide by all regulations prescribed by the Board pursuant to this rule, and further agrees to abide by and perform any award made thereunder.

Geldermann nonetheless asserted that it had never consented to be bound by the arbitration rule, claiming, like plaintiff in the instant case, that membership in the CBOT alone was not sufficient to constitute consent to arbitration, and therefore such membership could not establish a waiver of its constitutional right to an Article III forum. The

---

1. The current version of Form U–4 contains an arbitration clause pursuant to which the applicant agrees to arbitrate any dispute that is required to be arbitrated under the rules of the organization to which he/she applies. *Kahalnik*

*v. John Hancock Funds, Inc.,* 1996 WL 145842 (N.D.Ill.1996), holds that by executing the current form an applicant agrees to arbitrate ADEA claims that accrue after the effective date of the amendments to the NASD arbitration rules.

Seventh Circuit held that: (1) the Commodity Exchange Act requires arbitration of customers claims; (2) Geldermann's membership in the exchange, with its concomitant obligation to be governed by its rules, was sufficient to constitute consent to arbitration, and thus waived the Article III guarantee of impartial and independent federal adjudication; (3) providing commodity customers with the option of electing arbitration did not threaten the structural integrity of the courts or separation of powers, so that Geldermann's waiver of personal Lights under Article III was binding; and (4) since Geldermann was not entitled to an Article III forum, the Seventh Amendment right to a jury trial was not implicated.

In *O'Brien,* the defendant had signed a Form 8–R to register as an associated person under the CFTC with the National Futures Association ("NFA"). The Form 8–R contained no arbitration clause, but did contain a compliance clause substantially similar to the one signed by plaintiff in the instant case, pursuant to which the defendant had agreed to become and remain bound by all NFA requirements as then and thereafter in effect. The Seventh Circuit, following *Geldermann,* held that by signing the Form 8–R the defendant had agreed to be bound by all NFA rules, one of which was to arbitrate disputes between and among members and associates. "Thus, in signing Form 8–R [defendant] consented to mandatory arbitration of his dispute with [plaintiff] before the NFA." *Id.* at 260; Accordingly, consistent with *Geldermann* and *O'Brien,* the court concludes that the Form U–4 that plaintiff signed in 1979 incorporated by reference the arbitration provisions the NASD adopted in 1993.

Plaintiff argues that even if he agreed to arbitrate certain disputes, he did not agree to arbitrate his employment claims, because such claims were not covered by the NASD arbitration rules in existence when he signed the Form U–4. See *Farrand,* 923 F.2d 1253. As noted, however, the arbitration rules were amended in 1993 to include arbitration of all employment disputes. Plaintiff agreed to abide by all NASD rules as they may be amended. In *Farrand,* the Seventh Circuit

held that the pre–1993 rules did not extend to employment disputes. In *Kresock v. Bankers Trust Co.,* 21 F.3d 176 (7th Cir. 1994), the court held that the 1993 amendments did not apply to a termination occurring prior to the amendments' effective date. In the instant case, plaintiff was terminated in 1995, almost two years after the effective date of the amendment. Thus, his cause of action accrued after the effective date. Accordingly, the amendments are applicable to his claims. *Kahalnik v. John Hancock Funds, Inc.,* 1996 WL 145842 (N.D.Ill.1996).

■ Aside from his attack on the existence of an agreement to arbitrate, plaintiff also asserts that the securities industry's mandatory arbitration requirement imposes an unconstitutional condition on his employment. Specifically, plaintiff asserts that as a condition of his employment he is forced to waive three constitutionally protected rights: (1) the right to an Article III court on his federal and pendent state claims; (2) the right to a jury under the Seventh Amendment on his federal statutory and state common law claims; and (3) his Fourteenth Amendment due process and equal protection rights to have his statutory claims decided by a tribunal that is required to apply statutory standards. Although plaintiff has presented a different gloss on these claims, most if not all of them were rejected in *Kahalnik* and *Geldermann.*

As plaintiff recognizes, these claims are cognizable only if there is state action; i.e., if the government has forced plaintiff to waive his rights as a condition of his employment. Obviously, defendants are not state actors. *Kahalnik* holds that neither is the NASD. 1996 WL 145842 at *4. That ends the inquiry as far as the defendants are concerned. Plaintiff argues, however, that it is the SEC that is compelling arbitration. According to plaintiff, the Securities Exchange Act requires brokers and dealers to register with an exchange and abide by their rules, and that the SEC plays a substantial role in developing, reviewing and approving those rules. Because the exchange rules require mandatory arbitration, plaintiff argues that the federal government is compelling mandatory arbitration.

In *O'Brien,* the court held that the NFA was a government actor in performing the registration function. It did so, however, because the NFA had admitted that it had been delegated the registration function by the federal government. Plaintiff has not submitted any evidence to demonstrate that the NASD has also been delegated that function. Moreover, plaintiff is not required to sign the Form U–4 or to join the NASD; he can simply go into another business. Although this seems harsh, the Supreme Court has held, in similar circumstances, that despite such economic compulsion, "a follow-on registrant [under the Federal Insecticide, Fungicide and Rodenticide Act] explicitly consents to have its rights determined by arbitration." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 592, 105 S.Ct. 3325, 3339, 87 L.Ed.2d 409 (1985). In *Geldermann,* the court determined, relying on *Thomas,* that although the Commodity Exchange Act required the CFTC to promulgate rules requiring commodity exchange members to submit to arbitration, the requirement did not negate the voluntary nature of the applicant's consent to arbitration. *Geldermann,* 836 F.2d at 317. *O'Brien* held the same: "thus the mandatory nature of Pipkin's registration with NFA does not obviate his consent to submit to its arbitration procedures." *O'Brien,* 64 F.3d at 261. The *O'Brien* court also rejected a claim that the consent to arbitrate was obtained in violation of the Fifth Amendment due process clause. *Id.* at 262–63.

■ Additionally, because plaintiff has voluntarily consented to arbitration, he has waived any right he may have had to a full trial before an Article III court.[2] Without a right to an Article III forum, he has no Seventh Amendment claim. "In a non-Article III forum the Seventh Amendment simply does not apply." *Geldermann,* 839 F.2d at 323.

■ Finally, the court rejects plaintiff's due process and equal protection claims that he is somehow being denied the right to have his claim decided by a tribunal that is required to apply the statutory standards established by Congress and the courts. First, as noted above, it is the NASD that requires arbitration, and the NASD is not a state actor. Second, like the Supreme Court, this court "decline(s) to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbiters." *Gilmer,* 500 U.S. at 30, 111 S.Ct. at 1654. Additionally, contrary to plaintiff's assertions, the NASD arbitration manual does not instruct arbitrators that they do not have to follow the law; it merely states that they are not "strictly bound by case precedent or statutory law." The arbitrators are also told that if they manifestly disregard the law, the award may be vacated. Accordingly, the court concludes that plaintiff's employment discrimination and state law claims arising out of his employment are subject to mandatory arbitration. The court therefore grants defendant's motion to dismiss Counts IV through X without prejudice.

■ The ERISA claims are another matter. In the ERISA counts (I–III), plaintiff has sued The Nuveen Profit Sharing plan Committee and each of its members, none of whom are members of the NASD or signatories to any arbitration agreement. As noted in *Kahalnik,* "The NASD Code only provides for arbitration of agreements between associated persons and members. See NASD Code, Part I, Section 1." 1996 WL 145842 at *4. The fact that the Plan Committee and its members are not NASD members necessarily excludes them from the arbitration agreement. The Supreme Court has held that, in cases involving a number of parties where only some are privy to an arbitration agreement, "federal law requires piecemeal resolu-

---

2. There are, as *Geldermann* makes clear, certain non-waivable Article III interests, because Article III not only preserves to litigants their right to an impartial and independent federal adjudication of claims, but also serves as an inseparable element of the constitutional system of checks and balances. 836 F.2d at 321. Such concerns are not implicated here because "arbitration is con-

sistent with Congress's grant of concurrent jurisdiction over ADEA claims to state and federal courts . . ., because arbitration agreements, like the provisions for concurrent jurisdiction serve to advance the objective allowing claimants a broader right to select the forum for resolving disputes, whether it be judicial or otherwise." *Gilmer,* 500 U.S. 20 at 29, 111 S.Ct. at 1654.

tion when necessary to give effect to an arbitration agreement." *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983). Because the Plan Committee and its members are not parties to the agreement, they cannot force plaintiff to arbitrate his claims against them. Accordingly, the motion to dismiss counts I through III is denied.

### CONCLUSION

For the reasons set forth above, defendant Nuveen's motion to dismiss counts IV through X is granted without prejudice. The Plan Committee's motion to dismiss counts I through III is denied. The motion to strike or dismiss certain portions of the complaint or to stay this action and compel arbitration is denied without prejudice.