*639 OPINION OF THE COURT
Bernard J. Fried, J.
Plaintiff, Clifden Futures, LLC, a licensed futures commission merchant (FCM), brings this action against defendant, Man Financial, Inc., Clifden’s clearing agent and also a licensed FCM, asserting claims of breach of contract and negligence. Man moves to dismiss both claims, pursuant to CPLR 3211 (a) (7), on the basis that plaintiff has failed to state a cause of action. For the reasons set forth below, Man’s motion is granted, and the complaint is dismissed in its entirety.
As licensed FCMs, both Clifden and Man are registered with the Commodity Futures Trading Commission (CFTC). (Complaint[1] ¶¶ 6-7.) Man is also a member of the National Futures Association (NFA) and the Chicago Mercantile Exchange (CME), which is the exchange in which Clifden effectuates futures transactions. (Id. ¶ 1, 7.) Clifden is not a member of the CME. (Hearing tr at 16-17, Nov. 26, 2007.)
By agreement dated October 11, 2002 (the omnibus agreement), Clifden engaged Man to maintain an omnibus account[2] (the account) and to act as Clifden’s agent for the purposes of executing transactions within the account. (Id. ¶¶ 9-10.) The omnibus agreement provided, in part, “All transactions shall be subject to the Rules of the Exchange on or subject to the Rules of which such transactions are executed, and shall also be subject to any law or Governmental Regulation applicable thereto.” (Omnibus agreement[3] ¶ 4.)
The events giving rise to this lawsuit began after business hours on January 27, 2004, when Shimon Rosenfeld, a Clifden customer who regularly traded through the account, began selling short Standard & Poor’s futures contracts (the S & P contracts). Between 5:30 p.m. on January 27, 2004 and 2:30 a.m. on January 28, 2004, Rosenfeld sold short 2,022 “big” S & P contracts. (Complaint ¶¶ 14,16.) Because a “big” S & P contract is one having an individual value of $280,000, Rosenfeld’s actions resulted in the short sale of $500,000,000 worth of securities. (Id. ¶ 14.) A short sale is defined as
*640 “[a] sale of a security that the seller does not own or has not contracted for at the time of the sale, and that the seller must borrow to make delivery. Such a sale is usually made when the seller expects the security’s price to drop. If the price does drop, the seller can make a profit on the difference between the price of the shares sold and the lower price of the shares bought to pay back the borrowed shares.” (Black’s Law Dictionary 1366 [8th ed 2004].)
According to Clifden, during the night of January 27, 2004, “Man received, or should have received, information regarding Rosenfeld’s trading in the S & P Contracts on a ‘real-time’ basis.” (Complaint ¶ 18.) Having received such information, Man would have become aware that Rosenfeld’s short sale of 440 S & P contracts by 11:00 p.m. had exceeded the $8,755,049 of equity in the account. (Id. ¶ 19.) By 1:10 a.m. on January 28, 2004, after Rosenfeld had sold short 830 S & P contracts, the CME telephoned Man to alert it that “excessive and speculative trading was taking place in the Omnibus Account.” (Id. ¶ 20.) Notwithstanding this alert, Clifden avers that Man did not freeze the account until approximately 2:36 a.m. on January 28, 2004. (Id. ¶ 23.) By the time the account was frozen, Rosenfeld had sold short 2,022 S & P contracts, resulting in a loss to the account of $2,626,012.50. (Id. ¶ 26.) Clifden attempted to collect the lost funds from Rosenfeld, to no avail. Clifden, itself, then contributed the funds to the account, in order to prevent other customers from bearing the loss, and subsequently sought to collect the funds from Man. (Id. ¶¶ 27-30.) Man refused and “thereafter advised Clifden to transfer the Omnibus Account to another clearing broker.” (Id. ¶ 31.) This lawsuit followed.
Clifden argues that Man breached the omnibus agreement by failing to supervise the account: If Man had proper monitoring systems and procedures in place, Rosenfeld’s actions would have been curtailed by 11:00 p.m., and further trading would have been restricted after that time. (Id. ¶ 19.) Specifically, Clifden asserts,
“Defendant breached its obligations under the Omnibus Agreement by not properly supervising, and by not having the procedures in place to properly monitor, the Omnibus Account, as required by the rules of the CFTC, the CME and the NFA, which were incorporated by reference into the Omnibus Agreement pursuant to Paragraph 4 thereof.” (Complaint ¶ 34.)
*641 Clifden further asserts that this failure to have “the required systems and procedures in place in connection with the Omnibus Account, which would have prevented the $2,626,012.50 loss” gives rise to a cause of action for negligence as well. (Id. ¶ 38.)
Man argues that each cause of action ought to be dismissed, as the “breach of contract and negligence claims are improper attempts to assert claims under regulatory rules for which there are no private rights of action.” (Defendant’s mem[4] at 2.) Furthermore, Man asserts, the complaint fails to state any facts that, if true, would amount to a breach of any provision of the omnibus agreement. And the negligence claim, which arises, like the contract claim, from Man’s alleged breach of its purported duty to supervise the account, is not only duplicative of the contract claim, but also fatally flawed because it is not based upon any legally cognizable duty that arises independently of the contract. I will first address the contract claim and then turn to the negligence claim.
In order to plead a cause of action for breach of contract, the complaint
“must allege the provisions of the contract upon which the claim, is based. The pleadings must be ‘ “sufficiently particular to give the court and [the] parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved” as well as “the material elements of each cause of action or defense.” ’ ” (Atkinson v Mobil Oil Corp., 205 AD2d 719, 720 [2d Dept 1994] [citations omitted], quoting DiMauro v Metropolitan Suburban Bus Auth., 105 AD2d 236, 239 [2d Dept 1984].)
Vague and conclusory allegations are insufficient. (Gordon v Dino De Laurentiis Corp., 141 AD2d 435, 436 [1st Dept 1988].) Furthermore, the complaint must allege the essential terms of the contract, including the specific provisions upon which liability is predicated. (Matter of Sud v Sud, 211 AD2d 423, 424 [1st Dept 1995].)
Clifden’s complaint alleges that Clifden and Man entered into the omnibus agreement (11 9); that the omnibus agreement designated Man as Clifden’s agent and stated that all transactions would be subject to the rules of the CME (1110); and that *642 the rules of the CME provide, “among other things,” compliance with the Commodities Exchange Act (CEA), proper supervision, and written risk management policies (IT 17).[5] The complaint goes on to allege that Rosenfeld engaged in the after-hours short sale of S & P contracts (1I1Í13-16); that Man was notified by the CME that speculative trading was taking place in the account (IT 20); and that Man did not freeze the account until about an hour and a half after receiving this notification (1111 21-23).
Although Clifden seems to think its complaint is perfectly clear in its allegation that Man breached the omnibus agreement by failing to properly supervise the account, and by failing to have proper monitoring procedures in place (see plaintiffs opposition mem[6] at 6), the complaint is, in fact, unclear as to exactly how the actions of Man may be construed as a breach of the agreement between the parties.
Paragraph 4 of the omnibus agreement provides that all transactions within the account shall be subject to the rules of the CME and other governmental regulations. Assuming this language is sufficient to incorporate the rules of the CME into the contract, which will be discussed below, the only way that Man could have breached this provision would have been by engaging in a transaction that violated a specific rule of the CME or some other governmental regulation. The complaint would thus have to allege facts showing the transaction at issue, as well as the way in which specific actions of Man, in connection with said transaction, violated the specific provisions of a specific rule of the CME or other governmental regulation. Instead, Clifden’s complaint merely sets forth a few rules of the CME and a vague allegation that Man violated them. Although Clifden does allege that Man breached its obligations “by not properly supervising, and by not having the procedures in place to properly monitor, the Omnibus Account,” it does not allege that Man violated any specific provision of the CEA, nor the way in which Man’s supervision of the account was improper, nor that Man did not have in place written risk management policies and procedures.
*643 “It is well settled that in an action to recover damages for the breach of a contract, the facts constituting the breach must be pleaded, and that it is insufficient to plead generally that the defendant failed to fulfill his obligations under the contract, or that he has been guilty of a breach of the contract.” (Baby Show Exhibition Co., Inc. v Crowell Publ. Co., 174 App Div 368, 370 [1st Dept 1916]; see also David D. Siegel, NY Prac § 215, at 353 [4th ed 2005] [“While relieved of pleading her own performance under a contract, the plaintiff must still, of course, plead the facts constituting the defendant’s alleged breach”].)
Here, the plaintiff has done nothing more than plead generally that defendant has breached the contract by violating various rules of the CME. Such vague and conclusory allegations are insufficient to support a cause of action for breach of contract, and the motion to dismiss may be granted on this ground. (Gordon v Dino De Laurentiis Corp., 141 AD2d 435, 436 [1st Dept 1988].)
The above analysis would appear to provide an opportunity for Clifden to seek leave to replead, amending its complaint to set forth the facts constituting the alleged breach with greater specificity. But, because Clifden’s assertion is that Man breached the omnibus agreement by violating a rule of the CME or some other governmental regulation, the cause of action can only stand if those rules and regulations are, in fact, incorporated into the terms of the omnibus agreement. However, the language used in paragraph 4 does not accomplish this end.
As stated, paragraph 4 of the omnibus agreement provides that “[a] 11 transactions shall be subject to the Rules of the Exchange on or subject to the Rules of which such transactions are executed, and shall also be subject to any law or Governmental Regulation applicable thereto.” In its opposition papers, Clifden contends that this paragraph incorporates the rules of the CME (which is the “[e]xchange on . . . which such transactions are executed”), as well as: the entire CEA, because CME rule 123 requires compliance with the CEA; the rules of the CFTC, because “Governmental Regulations” are defined to include the rules of the CFTC and any other governmental body; and the rules of the NFA, because the NFA “has been delegated the CFTC’s function of registering futures commission merchants, introducing brokers and other persons under the CEA. Thus the NFA rules fall within the definition of Governmental Regulations, which includes ‘any rule, regulation, ruling or or *644 der of the [CFTC].’ ” (Plaintiffs opposition mem at 2-3 n 2; omnibus agreement 1i 1 [c].)
To support its assertion that the use of the phrase “subject to” is sufficient to incorporate into a contract a set of rules, Clifden relies on Raw Silk Trading Co., Inc. v Kaltenbach & Stephens, Inc. (199 App Div 799 [1st Dept 1922]). In that case, plaintiff seller had contracted with defendant buyer for the sale of certain goods. Defendant argued that the goods were nonconforming, refused to accept tender, and consequently refused to pay the purchase price. Plaintiff brought an action seeking payment of the purchase price, and defendant “asserted a counterclaim for the failure of the plaintiff to perform its part of the contract to deliver goods that were merchantable.” (Id. at 801.) The trial court dismissed the counterclaim and directed a verdict in plaintiffs favor, based on the fact that the contract incorporated by reference the “Raw silk rules of the Silk Association of America” (id. at 800), which obligated defendant to complain about any defect in the goods delivered within 15 days of receipt. As defendant did not raise any complaint about the merchantability of the goods until setting forth its counterclaim — a period far in excess of 15 days — the trial court dismissed the counterclaim. The First Department agreed that the rules of the Silk Association were, indeed, incorporated into the contract between the parties, stating, “The fair intendment of the provision in the contracts that the contracts shall be subject to these rules and regulations incorporates those rules and regulations governing the transactions between members as a substantial part of the contract itself.” (Id. at 803.) It is upon this piece of the Court’s decision that Clifden relies. (Plaintiffs opposition mem at 5-6.)
What Clifden fails to mention, however, is that the contractual provision at issue in Raw Silk provided not simply that the agreement was subject to the rules of the Silk Association, but rather, that, “Raw silk rules of the Silk Association of America are by this reference thereto made a part of this contract.” (Id. at 800 [emphasis added].) The provision at issue in the present case merely sets forth the statement that the transactions under the omnibus agreement “shall be subject to the rules of the Exchange,” etc. (Omnibus agreement 1Í 4 [emphasis added].) Nowhere in the omnibus agreement is there express language incorporating the rules of the CME into the contract.
Similarly, the language used in the contracts at issue in the other cases cited by Clifden, R.J. O’Brien & Assoc., Inc. v Pip- *645 kin (64 F3d 257 [7th Cir 1995]) and Illyes v John Nuveen & Co., Inc. (949 F Supp 580 [ND Ill 1996]), is quite distinguishable. Although the contracting party in each of those cases had not expressly agreed to arbitrate disputes, each had signed a registration form that included a commitment to be bound by the requirements of the National Futures Association (R.J. O’Brien) or the National Association of Securities Dealers (Illyes). The governing provision in both R.J. O’Brien and Illyes contained express language by which the signing party agreed to “become and remain bound by all NFA requirements” (R.J. O’Brien, 64 F3d at 260), or to “[a]bide by the statute(s), constitution(s), rules and bylaws [of the NASD]” (Illyes, 949 F Supp at 582). In contrast, the language used here is that all transactions, and not the contracting parties, themselves, shall be subject to the rules of the CME and other governmental regulations. (Omnibus agreement If 4.) Thus, rather than conferring any additional rights or responsibilities on the parties, or subjecting them to any additional liability vis-a-vis one another, the language of paragraph 4 appears to provide nothing more than the unexceptional statement that the rules of CME shall govern the transactions that take place in the omnibus account.[7]
Man points out that there is no private right of action available to enforce the rules of the CME, CFTC and NFA, which is not disputed. Rather, Clifden asserts that it wants only to enforce its rights under the omnibus agreement, and that those rights include the aforementioned rules and regulations. As discussed, however, the rules of the CME, CFTC, NFA and CEA have not been incorporated into the omnibus agreement. Therefore, even presuming the allegations of the complaint to be true, and according them “every favorable inference” (Beattie v Brown & Wood, 243 AD2d 395 [1st Dept 1997]), the allegations against Man would not amount to a breach of the omnibus agreement. As the complaint thus does not “manifest any cause of action cognizable at law,” Clifden’s first cause of action is dismissed. (Gorelik v Mount Sinai Hosp. Ctr., 19 AD3d 319, 319 [1st Dept 2005] [internal quotation marks omitted], quoting Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001].) Clifden’s second cause of action is for negligence. Clifden contends *646 that Man was negligent “because it did not have the required systems and procedures in place in connection with the Omnibus Account,” and “because it failed to properly supervise and monitor the Omnibus Account.” (Complaint 1Í1Í 38-39.) According to Clifden, had Man not failed in these two respects, Clifden’s $2,626,012.50 loss would have been prevented. (Id. 1138.)
At oral argument, however, counsel to plaintiff acknowledged that the cause of action for negligence cannot survive:
“the court: If you’re correct that the contractual claim survives, then there’s no basis to go forward with the negligence claim because it can’t be duplicative.
“mr feldman: I agree with your Honor.
“the court: If you’re incorrect that the contract cause survives, then there’s no basis for the negligence claim because the negligence claim arises out of a contractual part. So either way the negligence claim has to go; isn’t that correct?
“mr feldman: I agree with your Honor.” (Hearing tr at 34, Nov. 26, 2007.)
Accordingly, the negligence claim is dismissed.[8]
*647 For the foregoing reasons, it is ordered that defendant’s motion to dismiss is granted and the complaint is dismissed with costs and disbursements to defendant.

. (Complaint, May 11, 2007.) A copy of the complaint is attached as exhibit A to the Doherty affirmation in support of defendant’s motion to dismiss.

. An omnibus account is one in which the transactions of a number of customers are combined and carried out in the name of the originating broker (in this case, Clifden), rather than in the name of each individual customer. (Complaint ¶ 9; see also omnibus agreement ¶ 1 [d].)

. A copy of the omnibus agreement is attached to the complaint as exhibit A and is thus considered a part of the pleadings. (CPLR 3014.)

. Mem of law in support of defendant’s motion to dismiss the complaint.

. Specifically, the complaint sets forth CME rule 123, which requires compliance with the CEA; rule 901M, which “requires a CME Member to properly supervise trading on any electronic terminals it may sponsor”; and rule 982 (improperly referred to as rule 903), which obligates clearing members to have in place written risk management policies and procedures. (Complaint 1117.)

. Plaintiffs mem of law in opposition to defendant’s motion to dismiss.

. Further support for this reading lies in the fact that paragraph 4 of the omnibus agreement is found under the heading, “Applicable Rules.” If Clifden were correct in its assertion that this paragraph is designed to confer additional rights or remedies upon the parties, then would not this paragraph be more appropriately located under a heading entitled, “Rights and Responsibilities” or perhaps, “Rights and Remedies?”

. Even if counsel’s acknowledgment was not intended to be a concession, the negligence claim must fail:
“It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.” (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389 [1987] [citations omitted].)
Clifden’s negligence claim arises out of the omnibus agreement. Clifden contends that Man did not have the appropriate monitoring systems and procedures in place, as required by the omnibus agreement, and that this omission led to Man’s failure adequately to supervise the account. In the absence of the contract, Man would have had no duty to implement systems or procedures to protect Clifden’s interests. (See de Kwiatkowski v Bear, Stearns & Co., Inc., 306 F3d 1293, 1306 [2d Cir 2002] [“We are aware of no authority for the view that, in the ordinary case, a broker may be held to an open-ended duty of reasonable care, to a nondiscretionary client, that would encompass anything more than limited transaction-by-transaction duties”].) In the absence of any duty outside that created by contract, the negligence claim violates the “general rule that breach of contract does not, by itself, give rise to a tort action.” (Ivan Mogull Music Corp. v Madison-59th St. Corp., 162 AD2d 336, 337 [1st Dept 1990].)